SEYFARTH SHAW LLP
Jonathan L. Brophy (SBN 245223)
jbrophy@seyfarth.com
Shardé T. Skahan (SBN 286157)
sskahan@seyfarth.com
2029 Century Park East, Suite 3500
Los Angeles, California 90067-3021
Telephone: (310) 277-7200
Facsimile: (310) 201-5219

Attorneys for Defendants
MARSHALLS OF CA, LLC and MARSHALLS OF MA, INC.

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMILA AZIM,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>MARSHALLS OF CA, LLC; MARSHALLS OF MA, INC.; and DOES 1 through 100, Inclusive,<br><br>　　　　Defendant. | Case No. '22CV1950 BEN DEB<br><br>**DEFENDANTS MARSHALLS OF CA, LLC AND MARSHALLS OF MA, INC.'S NOTICE OF REMOVAL**<br><br>[San Diego County Superior Court, Case No. 37-2022-00043330-CU-WT-CTL]<br><br>Complaint Filed: October 26, 2022<br>Trial Date: None Set |

DEFENDANTS' NOTICE OF REMOVAL

90222309v.1

**TO THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF CALIFORNIA AND TO PLAINTIFF JAMILA AZIM AND HER ATTORNEYS OF RECORD:**

1. **PLEASE TAKE NOTICE** that Defendants MARSHALLS OF CA, LLC and MARSHALLS OF MA, INC. ("Marshalls") (collectively, "Defendants") file this notice of removal pursuant to 28 U.S.C. sections 1332 and 1441(a) and (b), based on diversity of citizenship jurisdiction, in order to effect the removal of the above-captioned action from the Superior Court for the County of San Diego to the United States District Court for the Southern District of California, and state that the removal is proper for the following reasons.

**I.   BACKGROUND**

2. On October 26, 2022, Plaintiff Jamila Azim ("Plaintiff") filed a Complaint in the Superior Court of California for the County of San Diego, entitled "*JAMILA AZIM, Plaintiff, v. MARSHALLS OF CA, LLC and MARSHALLS OF MA, INC. and DOES 1 through 100, inclusive,*" Case No. 37-2022-00043330-CU-WT-CTL ("Complaint").

3. In the Complaint, Plaintiff alleges four causes of action against Defendants for: (1) "National Origin Harassment, Discrimination, and Retaliation in Violation of California Fair Employment and Housing Act ("FEHA")"; (2) "Age Harassment, Discrimination, and Retaliation in Violation of FEHA"; (3) "Retaliation and Wrongful Termination in Violation of Public Policy"; and (4) "Declaratory Relief." The Complaint is attached as **Exhibit A** to this Notice of Removal.

4. On November 9, 2022, Defendants' registered agents for service of process in California received, via process server, the Summons, Complaint, Notice of Case Assignment and Case Management Conference, and Alternative Dispute Resolution Information Package. A true and correct copy of the service packets received by Defendants are attached as **Exhibits B** and **C** to this Notice of Removal.

///

///

5. On December 7, 2022, Defendants timely filed their Answer to Plaintiff's Complaint in San Diego County Superior Court. A true and correct copy of Defendants' Answer to Plaintiff's Complaint is attached as **Exhibit D** to this Notice of Removal.

6. Defendants have not filed or received any other pleadings or papers, other than the pleadings described as **Exhibits A** through **D**, in this action prior to this Notice of Removal. (Declaration of Shardé Skahan ("Skahan Decl."), ¶ 8).

7. Both Defendants consent to this removal.

**I.  TIMELINESS OF REMOVAL**

8. The time for filing a Notice of Removal does not begin to run until a party has been formally served with the summons and complaint under the applicable state law "setting forth the claim for relief upon which such action or proceeding is based" or, if the case stated by the initial pleading is not removable, after receipt of any "other paper from which it may be first ascertained that the case is one which is or has become removable." 28 U.S.C. §§ 1446; *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347-48 (1999) (holding that "a named defendant's time to remove is triggered by simultaneous service of the summons and complaint"); accord *Kenny v. Wal-Mart Stores, Inc.*, 881 F.3d 786, 791 (9th Cir., Feb. 1, 2018) ("We have also emphasized that 'a defendant does not have a duty of inquiry if the initial pleading or other document is 'indeterminate' with respect to removability.' *Roth v. CHA Hollywood Med. Ctr., L.P.*, 720 F.3d 1121, 1125 (9th Cir. 2013) (citing *Harris v. Bankers Life & Cas. Co.*, 425 F.3d 689, 693-94 (9th Cir. 2005)). Accordingly, 'even if a defendant could have discovered grounds for removability through investigation, it does not lose the right to remove because it did not conduct such an investigation and then file a notice of removal within thirty days of receiving the indeterminate document.'").

9. The service of process which triggers the 30-day period to remove is governed by state law. *City of Clarksdale v. BellSouth Telecomms., Inc.*, 428 F.3d 206, 210 (5th Cir. 2005) ("Although federal law requires the defendant to file a removal

motion within thirty days of service, the term 'service of process' is defined by state law.").

10. This Notice of Removal is timely because it is filed within thirty (30) days of personal service of the Summons and Complaint on November 9, 2022. 28 U.S.C. § 1446(b); Cal. Civ. Proc. Code § 415.10 ("A summons may be served by personal delivery of a copy of the summons and of the complaint to the person to be served. Service of a summons in this manner is deemed complete at the time of such delivery").

11. Written notice of the filing of this Notice of Removal is being delivered to Plaintiff through her counsel of record. A copy of the Notice of Removal will be filed with the Clerk of the Superior Court of the State of California for the County of San Diego.

## II. JURISDICTION BASED ON DIVERSITY OF CITIZENSHIP

12. The Court has original jurisdiction of this action under 28 U.S.C. section 1332(a)(1). As set forth below, this action is removable pursuant to the provisions of 28 U.S.C. section 1441(a) as the amount in controversy is in excess of $75,000, exclusive of interest and costs, and is between citizens of different states.

### A. Plaintiff Is A Citizen Of California

13. For diversity purposes, a person is a "citizen" of the state in which he or she is domiciled. *Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th Cir. 1983). A person's domicile is the place he or she resides with the intent to remain indefinitely. *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001). Residence is prima facie evidence of domicile. *State Farm Mut. Auto Ins. Co. v. Dyer*, 19 F.3d 514, 520 (10th Cir. 1994) (holding that "the place of residence is prima facie [evidence of] domicile").

14. Plaintiff is and, at all times since the commencement of this action has been, a resident and citizen of the State of California. The Complaint alleges that, "Plaintiff was, and now is, an individual residing in the County of San Diego, State of California." (*See* **Ex. A**, Complaint, ¶ 1.)

15. In addition, Defendants' review of Plaintiff's personnel file and public records reveals that Plaintiff resides in California. (*See* Skahan Decl., ¶ 9, **Ex. E**; Declaration of W. Alex Koch ("Koch Decl.") ¶ 5.)

16. Plaintiff, therefore, is, and at all times since the commencement of this action has been, a resident and citizen of the State of California.

### B. Defendant Marshalls of MA, Inc. Is Not A Citizen of California

17. Marshalls of MA is now, and was at the time of the filing of this action, a citizen of a State other than California within the meaning of 28 U.S.C. section 1332(c)(1). For diversity purposes, "a corporation is a citizen of (1) the state under whose laws it is organized or incorporated; and (2) the state of its 'principal place of business.'" *Davis v. HSBC Bank Nevada, N.A.*, 557 F.3d 1026, 1028 (9th Cir. 2009) (citing 28 U.S.C. 1332(c)(1)).

18. The United States Supreme Court in *The Hertz Corp. v. Friend*, 130 S. Ct. 1181, 1192 (2010), held that a corporate entity's "principal place of business" for determining its citizenship is its "nerve center":

> We conclude that "principal place of business" is best read as referring to the place where a corporation's officers direct, control, and coordinate the corporation's activities. It is the place that Courts of Appeals have called the corporation's "nerve center." **And in practice it should normally be the place where the corporation maintains its headquarters -- provided that the headquarters is the actual center of direction, control, and coordination,** *i.e.*, **the "nerve center"** . . . *The Hertz Corp.*, 130 S. Ct. at 1192 (emphasis added).

19. Marshalls of MA is now, and ever since this action commenced has been, incorporated under the laws of the Massachusetts. (Declaration of Joan Meltzer ("Meltzer Decl."), ¶ 7.) Further, as shown below, Marshalls of MA's principal place of business is, and has been at all times since this action commenced, located in the State of Massachusetts. (*Id.* at ¶ 8.)

20. Pursuant to *Davis*, 557 F.3d at 1029 and *The Hertz Corp.*, 130 S. Ct. at 1192, Marshalls of MA's principal place of business is Massachusetts because its "nerve

center" is located in that state. Marshalls of MA's corporate headquarters are located in Framingham, Massachusetts where Marshalls of MA's high level officers direct, control, and coordinate its activities. (Meltzer Decl., ¶ 8.) Marshalls of MA's high level corporate officers maintain offices in Framingham, Massachusetts, and many of Marshalls of MA's corporate level functions are performed in the Framingham, Massachusetts offices. (*Id.*) Additionally, many of Marshalls of MA's executive and administrative functions, including corporate finance and accounting, are directed from the Framingham, Massachusetts offices. (*Id.*)

21. Therefore, for purposes of diversity of citizenship, Marshalls of MA is, and has been at all times since this action commenced, a citizen of the State of Massachusetts and diversity exists between Plaintiff and Marshalls of MA. 28 U.S.C. 1332(c)(1).

**C. Defendant Marshalls of CA, LLC Is Not A Citizen Of California**

22. Marshalls of CA is now and, at all times since the commencement of this action has been, a citizen of a State other than California within the meaning of 28 U.S.C. section 1332(c)(1). *See Davis*, 557 F.3d at 1028 (citing 28 U.S.C. 1332(c)(1)); *The Hertz Corp.*, 559 U.S. at 92-93.

23. "A [ ] partnership or a corporation is a citizen of (1) the state under whose laws it is organized or incorporated; and (2) the state of its 'principal place of business.'" *Davis v. HSBC Bank Nevada, N.A.*, 557 F.3d 1026, 1028 (9th Cir. 2009) (citing 28 U.S.C. § 1332(c)(1)).

24. Moreover, unincorporated associations such as limited liability companies and partnerships are also treated as "a citizen of every state of which its owners/members are citizens." *Johnson*, 437 F.3d at 899; *see also Grupo Dataflux v. Atlas Global Grp., LP*, 541 US 567, 569 (2004) (same); *Carden v. Arkoma Assocs.*, 494 US 185, 195, 110 S.Ct. 1015, 1021 (1990) (same).

25. In this case, Marshalls of CA is now, and ever since this action commenced has been, a limited liability company, organized under the laws of the State of Virginia. (Meltzer Decl., ¶ 9.) Marshalls of CA's principal place of business is in Massachusetts

because it is where its headquarters is located and where its high level officers direct, control and coordinate its activities. (*Id.* at ¶ 10.) Additionally, the majority of Marshalls of CA's executive and administrative functions are performed in or directed from the Framingham, Massachusetts office, including corporate finance, accounting, purchasing, marketing and information systems. (*Id.*)

26. Even if this Court were to consider the citizenship of Marshalls of CA's members, it is still not a citizen of California because, as discussed below, **none** of its members and sub-members—(1) NBC Operating, LP, (2) NBC GP, LLC, and (3) NBC Trust—are a citizen of the State of California. Thus, there is diversity between Plaintiff and Marshalls of CA.

### 1. NBC Operating, LP, Is Not A Citizen Of California

27. At all times since Plaintiff commenced this lawsuit, Marshalls of CA's sole member has been NBC Operating, LP, and it owns 100% of Marshalls of CA. (Meltzer Decl. ¶ 11.)

28. NBC Operating, LP, is a limited partnership that at all relevant times during this litigation was organized under the laws of the State of Delaware with its principal place of business in Massachusetts. (*Id.,* ¶ 12-13.) NBC Operating, LP's principal place of business is in Massachusetts because it is where its headquarters is located and where its high level officers direct, control and coordinate its activities. (*Id.,* ¶ 13.) Additionally, the majority of NBC Operating, LP's executive and administrative functions are performed in or directed from the Massachusetts office, including corporate finance, accounting, purchasing, marketing and information systems. (*Id.*.)

29. Because NBC Operating, LP, is a partnership, the Court may also examine the citizenship of its members—NBC GP, LLC and NBC Trust—for purposes of establishing diversity jurisdiction. *See V & M Star, LP v. Centimark Corp.*, 596 F.3d 354, 357 (6th Cir. 2010) (When a member of a limited liability company is itself a

partnership or association, "the federal court needs to know the citizenship of each 'sub-member' as well.").

30. At all times since Plaintiff commenced this lawsuit, NBC Operating, LP's general partner has been NBC GP, LLC, a Delaware limited liability company, and its limited partner has been NBC Trust. (Meltzer Decl. ¶ 14.) NBC Trust owns 100% of NBC Operating, LP. (*Id.*)

### 2. NBC GP, LLC Is Not a Citizen Of California

31. NBC GP, LLC is a limited liability company that at all relevant times during this litigation was organized and existing under the laws of the State of Delaware. (Meltzer Decl. ¶ 15.)

32. NBC GP, LLC's headquarters is located in Framingham, Massachusetts where its high level officers direct, control and coordinate its activities. (*Id.* at ¶ 16.) Additionally, the majority of NBC GP, LLC's executive and administrative functions are performed in or directed from the Framingham, Massachusetts offices, including corporate finance, accounting, purchasing, marketing and information systems. (*Id.*)

33. At all times since Plaintiff commenced this lawsuit, NBC GP, LLC's sole member has been NBC Trust, and it owns 100% of NBC GP, LLC. (*Id.* at 17.)

### 3. NBC Trust Is Not A Citizen Of California

34. At all times since Plaintiff commenced this lawsuit, NBC Operating, LP's limited partner has been NBC Trust, and it owns 100% of NBC Operating, LP. (Meltzer Decl. ¶ 14.)

35. NBC Trust is a citizen for the State of Massachusetts because it is a business trust organized under the laws of the State of Massachusetts. (Meltzer Decl., ¶ 18.) NBC Trust's headquarters is located in Framingham, Massachusetts, where its high level officers direct, control, and coordinate its activities. Additionally, the majority of NBC Trust's executive and administrative functions are performed in or directed from the Framingham, Massachusetts offices, including corporate finance, accounting, purchasing, marketing and information systems. (*Id.* at 19.)

#### D.  Doe Defendants May Be Disregarded

36. Pursuant to 28 U.S.C. Section 1441(a), the residence of fictitious and unknown defendants should be disregarded for purposes of establishing removal jurisdiction under 28 U.S.C. section 1332. *Fristoe v. Reynolds Metals, Co.*, 615 F.2d 1209, 1213 (9th Cir. 1980) (unnamed defendants are not required to join in a removal petition). Thus, the existence of Doe defendants, 1-100, does not deprive this Court of jurisdiction.

### III.  VENUE

37. Venue lies in the Southern District of California pursuant to 28 U.S.C. sections 1441(a), 1446(a), and 84(c). This action originally was brought in the Superior Court of the State of California, County of San Diego, which is located within the Southern District of the State of California. (*See* **Ex. A**, Compl., ¶ 1.)

### II.  AMOUNT IN CONTROVERSY

38. While Defendants deny any liability as to Plaintiff's claims, the amount in controversy requirement is satisfied because "it is more likely than not" that the amount exceeds the jurisdictional minimum of $75,000. *See Sanchez v. Monumental Life Ins.*, 102 F.3d 398, 403-04 (9th Cir. 1996) ("[T]he defendant must provide evidence establishing that it is 'more likely than not' that the amount in controversy exceeds [the threshold] amount.") (internal quotations and citations omitted).

39. As explained by the Ninth Circuit, "the amount-in-controversy inquiry in the removal context is not confined to the face of the complaint." *Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir. 2004) (finding that the Court may consider facts presented in the removal petition). When the amount in controversy is not apparent from the face of the complaint, a defendant may state underlying facts supporting its assertion that the amount in controversy exceeds the jurisdictional threshold. *Gaus v. Miles, Inc.*, 980 F.2d 564, 566-67 (9th Cir. 1992).

40. In determining the amount in controversy, the Court must consider the aggregate of general damages, special damages, punitive damages, and attorneys' fees.

1. *Galt G/S v. JSS Scandinavia*, 142 F. 3d 1150, 1156 (9th Cir. 1998) (claims for statutory attorneys' fees to be included in amount in controversy, regardless of whether such an award is discretionary or mandatory); *Davenport v. Mut. Benefit Health & Accident Ass'n*, 325 F.2d 785, 787 (9th Cir. 1963) (punitive damages must be taken into account where recoverable under state law); *Conrad Assocs. v. Hartford Accident & Indem. Co.*, 994 F. Supp. 1196, 1198 (N.D. Cal. 1998) ("amount in controversy" includes claims for general and special damages, including attorneys' fees and punitive damages).

41. Here, considered together, the general and special damages sought by Plaintiff, along with the attorneys' fees that might be awarded if Plaintiff prevails, establish by a preponderance of the evidence that the amount in controversy exceeds $75,000, exclusive of interest and costs, as required by 28 U.S.C. § 1332(a).

### A. Plaintiff's Claims Exceed $75,000

42. The amount in controversy requirement is satisfied because "it is more likely than not" that it exceeds the jurisdictional minimum based on the allegations in Plaintiff's Complaint. *See Sanchez,* 102 F.3d at 404 ("the defendant must provide evidence establishing that it is 'more likely than not' that the amount in controversy exceeds [the threshold] amount") (internal citation omitted).

43. In the Complaint, Plaintiff alleges four causes of action against Defendants for: (1) "National Origin Harassment, Discrimination, and Retaliation in Violation of California Fair Employment and Housing Act ("FEHA")"; (2) "Age Harassment, Discrimination, and Retaliation in Violation of FEHA"; (3) "Retaliation and Wrongful Termination in Violation of Public Policy"; and (4) "Declaratory Relief."

44. Plaintiff claims general, compensatory and special damages, including, but not limited to, interest, attorneys' fees, costs, expenses (including medical expenses), lost earnings, and punitive damages. (*See* **Ex. A**, Complaint, ¶¶ 28, 34, 59, 65, 70, 76; Prayer for Relief, at ¶¶ 1-12.)

///

///

45. Plaintiff alleges Defendants terminated her employment on or around February 27, 2021. (**Ex. A**, Complaint, ¶ 48). At the time of termination, Plaintiff's pay was $15.45 per hour. (Koch Decl. ¶ 5.)

46. Plaintiff specifically alleges her damages include "loss of earnings and future earning capacity." (*See id.*, ¶¶ 28, 59, 70).

47. Conservatively assuming a work schedule of 30 hours per week, Plaintiff's alleged lost wages to date come to approximately **$42,178.50** ($15.45 x 30 hours x 91 weeks). Given that Plaintiff seeks, at minimum, lost wages for the time period from approximately February 27, 2021 (her alleged date of termination) through trial, Plaintiff is claiming approximately **$64,890** in lost wages, conservatively assuming a November 7, 2023 trial date (16 months after the filing of the complaint) ($15.45 x 30 hours x 140 weeks).

48. Even if Plaintiff worked less than 30 hours a week, courts routinely find removal appropriate in employment discrimination and retaliation cases, even when the alleged lost wages do not exceed the jurisdictional amount at the time of removal, because of the possibility of substantial punitive damages, emotional distress and attorneys' fee awards. *See*, *Melendez v. HMS Host Family Restaurants, Inc.*, No. CV 11-3842 ODW CWX, 2011 WL 3760058, at *2-3 (C.D. Cal. 2011) (removal appropriate where lost wages totaled $47,424); *Vasquez v. Arvato Digital Servs., LLC*, No. CV 11-02836 RSWL, 2011 WL 2560261, at *3, 5 (C.D. Cal. 2011) (same when lost wages estimated to be $25,171 at time of removal); *Chambers v. Penske Truck Leasing Corp.*, No. 1:11-CV-00381 LJO, 2011 WL 1459155, at *3 (E.D. Cal. 2011) (same when lost wages estimated to be $10,470 at time of removal); *Simmons*, *supra*, 209 F. Supp. 2d at 1031-35 (same where lost wages totaled $25,600 at time of removal).

B. **Emotional Distress Damages**

49. Plaintiff claims damages for emotional distress. (*See* **Ex. A**, Complaint, ¶¶ 32, 63, 74). A review of jury verdicts in California demonstrates that emotional distress awards in discrimination cases commonly exceed $75,000. *See Marsicz v. Ultrastar*

11

*Cinemas*, 2005 WL 6132324 (San Diego Sup. Ct.) (jury awarded $300,000 and $125,000 in emotional distress damages in discrimination case); *Silverman v. Stuart F. Cooper Inc.*, 2013 WL 5820140 (Los Angeles Sup. Ct.) (jury awarded $157,001 for emotional distress damages in discrimination case); *Vasquez v. Los Angeles Cnty. Metro. Transp. Auth.*, 2013 WL 7852947 (Los Angeles Sup. Ct.) (award of $1,250,000 for pain and suffering to employee in discrimination action); *Aboulafia v. GACN Inc.*, 2013 WL 8115991 (Los Angeles Sup. Ct.) (pain and suffering award of $250,000, $250,000, $250,000, and $250,267 to four employees in discrimination action); *Ward v. Cadbury Schweppes Bottling Grp.*, 2011 WL 7447633 (C.D. Cal) (jury award $5,600,000 in non-economic damages in discrimination and retaliation case); *Welch v. Ivy Hill Corp.*, 2011 WL 3293268 (Los Angeles Sup. Ct.) (award of $1,270,000 in pain and suffering to employee in a discrimination action); *Leimandt v. Mega RV Corp.*, 2011 WL 2912831 (Orange County Sup. Ct.) (jury awarded $385,000 in pain and suffering to employee in a discrimination case); *Peacock v. Quest Diagnostics*, 2010 WL 6806990 (C.D. Cal.) (jury award of $150,000 in non-economic loss to employee in action for discrimination action).

50. Plaintiff's allegations of emotional distress are similar to the issues raised in these cases. Defendants have attached these verdicts as **Exhibit F** to the concurrently filed Declaration of Shardé Skahan for the Court's review.

### C. Attorney's Fees and Costs

51. Plaintiff claims that she is entitled to attorneys' fees and costs. (*See* **Ex. A**, Complaint, ¶¶ 35, 66; Prayer for Relief, at ¶5-6, 8 ). Attorneys' fees are properly considered in calculating the amount in controversy for purposes of removal on grounds of diversity jurisdiction. *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998) (claims for statutory attorneys' fees to be included in amount in controversy, regardless of whether such an award is discretionary or mandatory).

52. Courts have also awarded far in excess of $75,000.00 in attorneys' fees in cases involving employment-related claims. See, e.g., *Crawford v. DIRECTV, Inc.*, 2010

1  WL 5383296 (Los Angeles County Sup. Ct.) (approving attorneys' fee award of
2  $159,762.50); *Davis v. Robert Bosch Tool Corp.*, 2007 WL 2014301, *9 (Cal. Ct. App.
3  2d Dist. July 13, 2007) (individual plaintiff sought $1.6 million in fees); *Denenberg v.*
4  *Cal. Dep't of Transp.*, 2006 WL 5305734 (San Diego County Sup. Ct.) (attorneys' fees
5  award of $490,000 for claims).  Defendants have attached these verdicts as **Exhibit G** to
6  the concurrently filed Declaration of Shardé Skahan for the Court's review.

7    53.   Defendants anticipate depositions being taken in this case, and that
8  ultimately, Defendants will file a Motion for Summary Judgment.  Based on defense
9  counsel's experience, attorneys' fees in employment discrimination and wrongful
10 termination cases often exceed $75,000.  In this regard, it is more likely than not that the
11 fees will exceed $75,000.00 through discovery and a summary judgment hearing, and
12 the fees would certainly exceed $75,000.00 if the case proceeds to trial.  (Skahan Decl.,
13 ¶ 11.)

14    **D.   Punitive Damages**

15    54.   Finally, the Court must also consider Plaintiff's request for punitive
16 damages in determining the amount in controversy.  *Davenport v. Mutual Benefit*
17 *Health and Accident Ass'n*, 325 F.2d 785, 787 (9th Cir. 1963) (punitive damages must
18 be taken into account where recoverable under state law). (*See* **Ex. A** Complaint, ¶¶ 34,
19 76; Prayer for Relief, ¶ 10.)

20    55.   Courts have affirmed jury verdicts exceeding $1 million in punitive
21 damages in alleged retaliation cases.  *See, e.g., Roby v. McKesson Corp.*, 47 Cal. 4th
22 686 (2009).

23    56.   Based upon the allegations contained in the Complaint, Defendants are
24 informed and believe that Plaintiff seeks damages within the jurisdictional authority of
25 this Court.
26 ///
27 ///
28 ///

57. Because diversity of citizenship exists between Plaintiff and Defendants, and the matter in controversy between the parties is in excess of $75,000.00, this Court has original jurisdiction of the action pursuant to 28 U.S.C. section 1332(a)(1).

## IV. NOTICE OF REMOVAL

58. Pursuant to 28 U.S.C. Section 1446(d), written notice of the filing of this Notice of Removal will be given promptly to Plaintiff and, together with a copy of the Notice of Removal, will be filed with the Clerk of the Superior Court of the State of California, County of San Diego, in the State Court Action.

59. This Notice of Removal will be served on counsel for Plaintiff. A copy of the Proof of Service regarding the Notice of Removal will be filed shortly after these papers are filed and served.

60. In compliance with 28 U.S.C. section 1446(a), true and correct copies of all process, pleadings, and orders filed and/or served in this action are attached as Exhibits **A** through **D** to this Notice of Removal.

## V. PRAYER FOR REMOVAL

61. WHEREFORE, Defendants pray that this civil action be removed from the Superior Court of the State of California, County of San Diego, to the United States District Court for the Southern District of California.

DATED: December 8, 2022

Respectfully submitted,

SEYFARTH SHAW LLP

By: */s/ Shardé T. Skahan*
Jonathan L. Brophy
Shardé T. Skahan
Attorneys for Defendants
MARSHALLS OF CA, LLC and
MARSHALLS OF MA, INC.