1   SEYFARTH SHAW LLP
Jonathan L. Brophy (SBN 245223)
2   jbrophy@seyfarth.com
Shardé T. Skahan (SBN 286157)
3   sskahan@seyfarth.com
2029 Century Park East, Suite 3500
4   Los Angeles, California 90067-3021
Telephone:  (310) 277-7200
5   Facsimile: (310) 201-5219

6   Attorneys for Defendants
MARSHALLS OF CA, LLC and MARSHALLS
7   OF MA, INC.

8

9                    UNITED STATES DISTRICT COURT

10                  SOUTHERN DISTRICT OF CALIFORNIA

11

12   JAMILA AZIM,                          Case No. **'22CV1950 BEN DEB**

13              Plaintiff,                  **DECLARATION OF SHARDÉ T. SKAHAN IN SUPPORT OF**
14        v.                               **DEFENDANTS MARSHALLS OF CA, LLC'S AND MARSHALLS OF**
15   MARSHALLS OF CA, LLC;                 **MA, INC.'S NOTICE OF**
MARSHALLS OF MA, INC.; and DOES 1         **REMOVAL**
16   through 100, Inclusive,
                                           [San Diego County Superior Court, Case
17              Defendant.                  No. 37-2022-00043330-CU-WT-CTL]

18                                          Complaint Filed:  October 26, 2022
                                           Trial Date:  None Set
19

20

21

22

23

24

25

26

27

28

_____
DECLARATION OF SHARDÉ T. SKAHAN ISO DEFENDANTS' NOTICE OF REMOVAL
89195630v.1

## DECLARATION OF SHARDÉ T. SKAHAN

1.      I, Shardé T. Skahan, hereby declare and state as follows:

2.      I have personal knowledge of the facts contained in this declaration, and if called as a witness, could and would testify as to their accuracy.

3.      I am an attorney admitted to practice in the State of California, and I am an associate at the law firm of Seyfarth Shaw LLP.  I am one of the lawyers responsible for representing Defendants MARSHALLS OF CA, LLC and MARSHALLS OF MA, INC., ("Defendants") in the above-captioned lawsuit filed on behalf of Plaintiff Jamila Azim ("Plaintiff").  All of the pleadings and correspondence in this lawsuit are maintained in our office in the ordinary course of business under my direction and control.  I have reviewed the pleadings and correspondence in preparing this declaration.

4.      **Exhibit A**, attached to the Notice of Removal, is the Complaint filed by Plaintiff in the Superior Court of San Diego, Case No. 37-2022-00043330-CU-WT-CT.

5.      **Exhibit B**, attached to the Notice of Removal, is the service packet received by Marshalls of CA, LLC.

6.      **Exhibit C**, attached to the Notice of Removal, is the service packet received by Marshalls of MA, INC.

7.      **Exhibit D**, attached to the Notice of Removal, is the Answer filed by Defendants in state court answering Plaintiff's Unverified Complaint.

8.      **Exhibits A** through **D** constitute all of the pleadings in the Superior Court's record that have been served on Defendants, filed by Defendants, or retrieved from the Court's records prior to the filing of this Notice of Removal.  Defendants have not filed or received any other pleadings or papers, other than the pleadings described as **Exhibits A** through **D**, in this action prior to this Notice of Removal.

9.      **Exhibit E,** attached hereto, are the results from a search of  Plaintiff's public records, which I reviewed, stating that Plaintiff resides in California.

10.      **Exhibit F**, attached hereto, are the results of verdicts similar to Plaintiff's allegations of emotional distress.

DECLARATION OF SHARDÉ T. SKAHAN ISO DEFENDANTS' NOTICE OF REMOVAL

89195630v.1

11.   **Exhibit  G**, attached hereto, are the results of verdicts similar to Plaintiff's allegations of attorneys' fees.

12.   I anticipate depositions being taken in this case, and ultimately, I will file a Motion for Summary Judgment.  Based on my experience, attorneys' fees in employment discrimination and wrongful termination cases often exceed $75,000.  In this regard, it is more likely than not that the fees will exceed $75,000.00 through discovery and a summary judgment hearing, and the fees would certainly exceed $75,000.00 if the case proceeds to trial.

I declare under penalty of perjury under the laws of California and the United States that the foregoing is true and correct.

This declaration was executed on December 8, 2022 at Los Angeles, California.

_____
Shardé T. Skahan

DECLARATION OF SHARDÉ T. SKAHAN ISO DEFENDANTS' NOTICE OF REMOVAL
89195630v.1

# Jamila Azim v. Marshalls of CA, LLC et al.
## TABLE OF CONTENTS

| Exhibits | Description | Pages |
|----------|-------------|-------|
| E | Public Records Search | 1-2 |
| F | Jury Verdicts (Emotional Distress) | 3-31 |
| G | Jury Verdicts (Attorneys' Fees) | 32-45 |



**Search:**     Public Records : SmartLinx® Comprehensive Person Report
**Terms:**      ssn(███████) state(ALL) radius(30)

| <u>No.</u> | <u>Full Name</u> | <u>Address/Phone</u> | <u>SSN</u> |
|---|---|---|---|
| 1. | AZIM, J<br>AZIM, JAMILA<br>AZIM, JAMILA A<br>AZIM, JAMILA AZIM<br>AZIM, JAUILA<br>AZIM, KAMILA<br>JAMILA, AZIM<br>JAUILA, AZIM<br>JAZIM, JAMILA AZIM<br>(Gender: Female)<br>(DOB: ███████)<br>(Age: ██) | ████████████<br>CHULA VISTA, CA 91913-3976<br>SAN DIEGO COUNTY<br>(09/2012-Current)<br><br>██████████<br>GILBERT, AZ 85234-7401<br>MARICOPA COUNTY<br>(12/2001-12/2021)<br><br>██████████<br>HIGLEY, AZ 85236-3401<br>MARICOPA COUNTY<br>(01/2002-05/2008)<br><br>█████████<br>CHULA VISTA, CA 91913-1575<br>SAN DIEGO COUNTY<br>(03/2015-03/2018)<br><br>█████████<br>CHULA VISTA, CA 91911-2509<br>SAN DIEGO COUNTY<br>(06/2015-03/2016)<br><br>██████████<br>CHULA VISTA, CA 91915-1862<br>SAN DIEGO COUNTY<br>(2012-06/2015)<br><br>████████████<br>GILBERT, AZ 85234-7750<br>MARICOPA COUNTY<br>(2007-10/2022)<br><br>███████<br>🚩 Phone & ZIP code conflict<br><br>██████████<br>GILBERT, AZ 85234-5851<br>MARICOPA COUNTY<br>(11/2008-11/2008)<br><br>██████████<br>GILBERT, AZ 85296-4229<br>MARICOPA COUNTY<br>(12/2005-09/2018)<br><br>███████<br>🚩 Phone may be disconnected<br><br>███████<br>MESA, AZ 85201-5619<br>MARICOPA COUNTY<br>(02/2004-02/2004)<br><br>837 N FA FALCON | ████████<br>(CA:1982-1983)<br><br>LexID(sm):000104907353 |

**EXHIBIT E - 1**

| No. | Full Name | Address/Phone | SSN |
|-----|-----------|---------------|-----|

████████
MARICOPA COUNTY
(08/2003-08/2003)

████████
MESA, AZ 85210-4979
MARICOPA COUNTY
(10/1995-10/2000)

████████
MESA, AZ 85202-4260
MARICOPA COUNTY
(06/1994-10/1995)

████████
RESEDA, CA 91335-4426
LOS ANGELES COUNTY
(02/1986-10/1994)

████████
MESA, AZ 85210
MARICOPA COUNTY
(08/1994-08/1994)

Key

⚠ High Risk Indicator. These symbols may prompt you to investigate further

🚩 Moderate Risk Indicator. These symbols may prompt you to investigate further

🚩 General Information Indicator. These symbols inform you that additional information is provided

✓ The most recent telephone listing as reported by the EDA source

Terms:              ssn████████ state(ALL) radius(30)
Date/Time:          Thursday, December 1, 2022 1:38 PM
Permissible Use:    **Your DPPA Permissible Use: Litigation**
                    **Your GLBA Permissible Use: Legal Compliance**

Copyright © 2022 LexisNexis, a division of Reed Elsevier Inc. All Rights Reserved.

**End of Document**

EXHIBIT E - 2

43 Trials Digest 16th 11, 2013 WL 5820140 (Cal.Super.) (Verdict and Settlement Summary)

Copyright (c) 2019 Thomson Reuters/West
Superior Court, Los Angeles County, California.

## Silverman vs. Stuart F. Cooper Inc.

**TOPIC:**

Synopsis: Terminated employee claims age discrimination

Case Type: Labor & Employment; Discrimination; Labor & Employment; Age; Labor & Employment; Harassment-General; Labor & Employment; Termination/Constructive Discharge

DOCKET NUMBER: BC467464

STATE: California
COUNTY: Los Angeles

Verdict/Judgment Date: July 19, 2013

JUDGE: Deirdre H. Hill

**ATTORNEYS:**

Plaintiff: Allen J. Beck, Gleason & Favarote, Los Angeles; Paul M. Gleason, Gleason & Favarote, Los Angeles; Janet S. Yavrouian, Gleason & Favarote, Los Angeles.

Defendant: Charles J. Schufreider, Barton, Klugman & Oetting, Los Angeles.

**SUMMARY:**

Verdict/Judgment: Plaintiff

Verdict/Judgment Amount: $325,223

Range: $200,000-499,999

$133,222 to plaintiff for past loss of earnings

$40,668 to plaintiff for future loss of earnings

$116,333 to plaintiff for past emotional distress

$35,000 to plaintiff for future emotional distress

The jury found defendants Stuart F. Cooper Inc. or Burdge Cooper Inc. acted with oppression, fraud or malice but declined to award punitive damages.

Trial Type: Jury

Deliberations: Not reported.

Jury Poll: Not reported.

EXHIBIT F - 3

**EXPERTS:**
Plaintiff: Not reported.
Defendant: Not reported.

**TEXT:**

**CASE INFORMATION**

**FACTS/CONTENTIONS**
According to court records: Plaintiff Joe Silverman was hired by defendant Stuart F. Cooper Inc. in 1994 as a salesman. Plaintiff said he was compensated with a base salary, commission, expense reimbursement and medical benefits, regardless of sales performance. Plaintiff said his sale performance fluctuated, but he was never subjected to discipline, and he achieved an acceptable sales record. In August 2009, plaintiff was reportedly demoted by defendant David Overgaar, defendant Stuart Cooper's president, without warning and his compensation package was changed. His compensation change converted him to 100 percent commission and limited his automobile reimbursement to $200 per month. Plaintiff said the company had never forced such a compensation package on any other employee. The new package also established a sales quota for plaintiff in order to return to his prior compensation plan. He said he was required to have sales of at least $90,000 over a six-month period with no single job accounting for more than 30 percent of sales. This quota was unprecedented and never applied to other sales employees, plaintiff claimed.

In November 2009, another sales representative, 49, was allegedly hired with a salary plus commissions compensation package.

In October 2010 plaintiff, 76, apparently filed a claim for age discrimination with the Department of Fair Employment and Housing based on the demotion and his change in compensation. Within six months of his complaint, plaintiff said, plaintiff was terminated by defendant Burdge Cooper Inc. for the pretextual reason of "poor attitude."

Plaintiff alleged age discrimination in violation of the Fair Employment and Housing Act and public policy, unlawful retaliation in violation of the FEHA, age harassment in violation of the FEHA, failure to prevent discrimination and harassment in violation of the FEHA, wrongful termination in violation of public policy and failure to pay final wages and waiting time penalties.

**CLAIMED INJURIES**
According to court records:
Emotional distress.

**CLAIMED DAMAGES**
According to court records:
Not reported.

**SETTLEMENT DISCUSSIONS**
According to court records:

Not reported.

**COMMENTS**
According to court records:

The complaint was filed Aug. 12, 2011.

EXHIBIT F - 4

Case 3:22-cv-01950-BEN-DEB   Document 1-2   Filed 12/08/22   PageID.20   Page 9 of 49

Silverman vs. Stuart F. Cooper Inc., 43 Trials Digest 16th 11 (2013)

Trials Digest, A Thomson Reuters/West business
Los Angeles County Superior Court/Downtown

---

**End of Document**                          © 2022 Thomson Reuters. No claim to original U.S. Government Works.

EXHIBIT F - 5

JVR No. 1402210041, 2013 WL 7852947 (Cal.Super.) (Verdict and Settlement Summary)

Copyright (c) 2019 Thomson Reuters/West
Superior Court, Los Angeles County, California.

## VASQUEZ v. LOS ANGELES COUNTY METROPOLITAN TRANSPORTATION AUTHORITY

BC484335

DATE OF FILING: October 25, 2012
DATE OF TRIAL/SETTLEMENT: November 12, 2013

**SUMMARY**
**Outcome: Plaintiff Verdict**
**Total: $1,904,635**
HIGH AMOUNT: $0

LOW AMOUNT: $0


**Related Court Documents:**
Plaintiff's second amended complaint: 2012 WL 10007313

Defendant's trial brief: 2013 WL 6506751

Verdict form: 2013 WL 6506795


**EXPERT-WITNESSES:**
**ATTORNEY:**
Plaintiff: Scott O. Cummings, Cummings & Franck P.C., Gardena, CA
Plaintiff: Lee Franck, Cummings & Franck P.C., Gardena, CA
Defendant: Calvin R. House, Gutierrez Preciado & House L.L.P., Pasadena, CA
Defendant: Caroline Shahinian, Gutierrez, Preciado & House L.L.P., Pasadena, CA

JUDGE: Kevin C. Brazile

RANGE AMOUNT: $1,000,000 - 1,999,999

STATE: California
COUNTY: Los Angeles

**SUMMARY**
**PLAINTIFF:**
Sex: M

Age: Adult


General Occupation: General Laborer

EXHIBIT F - 6

**DEFENDANT:**
Sex: O

Organization Type: Los Angeles County Metropolitan Transportation Authority

**DAMAGES:**
Compensatory Pain & Suffering: $1,250,000

Compensatory Future Medical: $185,000

Compensatory Past Wages: $84,348

Compensatory Future Wages: $385,287

Total Compensatory Award: $1,904,635

Punitive Damages: $0

Hedonic Damages: $0

Property Damages: $0

Interest: $0

Other Damages: $0

Loss of Services: $0

**ADVERSE ACTION**
Closer Supervision: false

Constructive Discharge: false

Demotion: false

Denial Tenure: false

Failure Accomodate: true

Failure Grant Leave: true

Failure Hire: true

Failure Promote: false

Suspension: true

EXHIBIT F - 7

Sexual Harassment: false

Harassment: true

Hostile Work Env: false

Isolation: false

Lay Off: false

Loss Benefits: false

Loss Pay: false

Loss Seniority: false

Negative Eval: false

Negative Reference: false

Pay Increase Denial: false

Reassignment: false

Reduction Pay: false

Reprimands: true

Restrictions: false

Termination: true


**Entity Type: Government Entity**
**STATUTES**
**Primary Specific Statute**
Primary Name: State


**Primary General Statute**
**Primary Name: Disability Discrimination**
Primary General Statute Discrimination: true

Specific Statute: State


**General Statute: Family and Medical Leave**
General Statute Discrimination: false

Specific Statute: General

EXHIBIT F - 8

**General Statute: Retaliation**
General Statute Discrimination: false

Comparative Negligence Percentage: 0

**FACTS:**

Raphael Vasquez, a former bus driver, sued the Los Angeles County Metropolitan Transportation Authority for disability discrimination, failure to accommodate, failure to engage in the interactive process, in violation of the Americans with Disabilities Act (ADA), and interference with the Family and Medical Leave Act (FMLA) and the California Family Rights Act (CFRA), and retaliation in violation of the Fair Employment and Housing Act (FEHA) Cal. Gov't. Code Secs. 12940 et seq. The plaintiff alleged during his employment, he suffered from a variety of disabilities, including but not limited to gout, cataracts, blurry vision, diabetes, for which he treated with doctors, and in January 2010, he requested a medical leave of absence for hip replacement surgery due to Avascular Necrosis of the femur, which the defendant admitted he was eligible for, and he provided the necessary documentation indicating he would be out for approximately five months. He asserted following the surgery, his doctor provided a note that he was unable to work until June 1, 2010 due to Trochanteric Bursitis, and aftercare from his hip replacement, thereafter, he was cleared to return to work. Vazquez claimed in November 2010, he had cataract surgery, but the defendant began to use his disabilities for adverse actions, including discipline and suspensions, and in January 2011, he was terminated, and the proffered reason for his termination was his attendance. He asserted the defendant failed to engage in a timely, good faith, interactive process to determine the most effective reasonable accommodations for him, discouraged the use of FMLA leave, which violated the CFRA, and that his disability, his request for and/or taking medical leave were substantial motivating factors in the decision to terminate him. The defendant denied the allegations and contended the plaintiff was charged with excessive absenteeism after accumulating eight absences within a 12-month period, and at his discharge hearing he told the hearing officer he was in perfect health, but that he had treated some medical conditions. The defendant argued that the officer had no reason to believe the plaintiff might be disabled, and terminated him for violating it's attendance policy.

Jury Verdict Research
COURT: Superior

                    © 2022 Thomson Reuters. No claim to original U.S. Government Works.

 © 2022 Thomson Reuters. No claim to original U.S. Government Works.    4

EXHIBIT F - 9

JVR No. 1403200023, 2013 WL 8115991 (Cal.Super.) (Verdict and Settlement Summary)

Copyright (c) 2019 Thomson Reuters/West
Superior Court, Los Angeles County, California.

## ABOULAFIA v. GACN INC. D/B/A CABLE'S RESTAURANT

BC469940

DATE OF FILING: September 23, 2011
DATE OF TRIAL/SETTLEMENT: December 17, 2013

**SUMMARY**
**Outcome: Plaintiff Verdict**
**Total: $5,681,682**
HIGH AMOUNT: $0

LOW AMOUNT: $0


**Related Court Documents:**
Plaintiffs' complaint: 2011 WL 6463766

Verdict form: 2013 WL 6870002

Verdict form (punitive damages): 2013 WL 6869977


**EXPERT-WITNESSES:**
**ATTORNEY:**
Plaintiff: James R. Rosen, Rosen Saba LLP, Beverly Hills, CA
Plaintiff: Elizabeth L. Bradley, Rosen Saba LLP, Beverly Hills, CA
Plaintiff: Jonathan S. Dennis, Rosen Saba LLP, Beverly Hills, CA
Defendant: Eric J. Erickson, Lewis, Brisbois, Bisgaard & Smith LLP, Los Angeles, CA
Defendant: Christopher M. Habashy, Lewis, Brisbois, Bisgaard & Smith LLP, Los Angeles, CA
Defendant: Marie Dominguez-Gasson, Lewis, Brisbois, Bisgaard & Smith LLP, Los Angeles, CA

JUDGE: Yvette Palazuelos

RANGE AMOUNT: $5,000,000 - 999,999,999

STATE: California
COUNTY: Los Angeles

**SUMMARY**
**PLAINTIFF:**
Sex: Martha Aboulafia: F

Age: Adult, 58

General Occupation: Food Service Worker

EXHIBIT F - 10

Sex: Cheryl B. Colgin: F

Age: Adult, 58

General Occupation: Food Service Worker

Sex: Patricia Monica: F

Age: Adult, 67

General Occupation: Food Service Worker

Sex: Regina Greene: F

Age: Adult, 46

General Occupation: Food Service Worker

**DEFENDANT:**
Sex: O

General Occupation: Restaurant, Nightclub or Tavern

Organization Type: GACN Inc. d/b/a Cable's Restaurant

**DAMAGES:**
Compensatory Pain & Suffering: Martha Aboulafia: $250,000

Compensatory Past Wages: Martha Aboulafia: $58,164

Compensatory Future Wages: Martha Aboulafia: $53,592

Total Compensatory Award: Martha Aboulafia: $361,756

Compensatory Pain & Suffering: Cheryl B. Colgin: $250,000

Compensatory Past Wages: Cheryl B. Colgin: $66,262

Compensatory Future Wages: Cheryl B. Colgin: $131,372

Total Compensatory Award: Cheryl B. Colgin: $447,634

Compensatory Pain & Suffering: Patricia Monica: $250,000

Compensatory Past Wages: Patricia Monica: $95,588

Compensatory Future Wages: Patricia Monica: $157,486

EXHIBIT F - 11

Total Compensatory Award: Patricia Monica: $503,074

Compensatory Pain & Suffering: Regina Greene: $250,267

Compensatory Past Wages: Regina Greene: $56,613

Compensatory Future Wages: Regina Greene: $62,338

Total Compensatory Award: Regina Greene: $369,218

Punitive Damages: $1,000,000

Hedonic Damages: $0

Property Damages: $0

Interest: $0

Other Damages: $0

Loss of Services: $0

**ADVERSE ACTION**
Closer Supervision: false

Constructive Discharge: false

Demotion: false

Denial Tenure: false

Failure Accomodate: false

Failure Grant Leave: false

Failure Hire: false

Failure Promote: false

Suspension: false

Sexual Harassment: false

Harassment: true

Hostile Work Env: false

Isolation: false

EXHIBIT F - 12

Lay Off: false

Loss Benefits: false

Loss Pay: true

Loss Seniority: false

Negative Eval: false

Negative Reference: false

Pay Increase Denial: false

Reassignment: false

Reduction Pay: false

Reprimands: false

Restrictions: false

Termination: true


**Entity Type: Service/Retail Company**
**STATUTES**
**Primary Specific Statute**
Primary Name: State


**Primary General Statute**
**Primary Name: Age Discrimination**
Primary General Statute Discrimination: true


Specific Statute: General


**General Statute: Wrongful Termination**
General Statute Discrimination: false


Comparative Negligence Percentage: 0


**FACTS:**
58-year-old Martha Aboulafia, 58-year-old Cheryl B. Colgin, 46-year-old Regina Greene, and 67-year-old Patricia Monica, formerly employed as servers, sued GACN Inc. d/b/a Cable's Restaurant, for age discrimination, wrongful termination, in violation of California's public policy, and failure to provide rest periods and/or 30 minute meal periods, pursuant to Cal. Lab. Code Sec. 226.7. The plaintiffs claimed during their employment, they were never the subject of any negative reviews or

EXHIBIT F - 13

disciplinary actions until the restaurant came under new ownership, thereafter, they experienced negative treatment, a reduction in hours, and sudden complaints about job performance. They alleged after the transfer of ownership, suddenly they were systematically harassed, wrongfully terminated, and were replaced by younger female servers. Aboulafia, who worked for the defendant for more than 17 years, contended after the transfer of ownership, two days later she was terminated allegedly because business was slow, and she was told that an unidentified customer had complained about her. Colgin, who worked for the restaurant for more than 14 years, alleged she was also told two days after the transfer that she was no longer needed, but the manager called her again 10 minutes later, and fired her a second time, likely not remembering he had terminated her minutes earlier. Greene, who worked for the restaurant for three years, claimed that after the transfer, she was instructed to train newly hired younger female employees, but seven months later her manager falsely accused her of being under the influence of drugs and/or alcohol, terminated her, and subsequently falsely reported to the California Employment Development Department that she had voluntarily resigned in its attempt to avoid paying her unemployment benefits. Monica, who was employed for 13 years, asserted she was terminated two days after the transfer purportedly because her services were no longer needed, and business was slow. The defendant denied the allegations and contended it used nondiscriminatory factors to facilitate the layoffs, including identifying servers with flexible schedules and a willingness to work with all customers, and that it retained 11 servers employed by former management, and eight of those servers were within the protected class, ranging from 45 to 75 years old. The defendant also claimed the plaintiffs were allowed to take appropriate rest breaks. The jury awarded Aboulafia $1,361,756, Colgin $1,447,634, and Monica $1,503,074 for their age discrimination claims, and Greene's award included $952 for missed rest periods for a total award of $1,369,218.


Jury Verdict Research
COURT: Superior

---

     © 2022 Thomson Reuters. No claim to original U.S. Government Works.

---

**WESTLAW**   © 2022 Thomson Reuters. No claim to original U.S. Government Works.

EXHIBIT F - 14

10 Trials Digest 15th 7, 2011 WL 7447633 (C.D.Cal.) (Verdict and Settlement Summary)

Copyright (c) 2019 Thomson Reuters/West
United States District Court, C.D. California, Western Division.

# Ward vs. Cadbury Schweppes Bottling Group

**TOPIC:**

Synopsis: Truck drivers claim age discrimination resulted in constructive discharge

Case Type: Labor & Employment; Age; Labor & Employment; Termination/Constructive Discharge

DOCKET NUMBER: 09CV03279(DMG)

STATE: California
COUNTY: Not Applicable

Verdict/Judgment Date: December 7, 2011

JUDGE: Dolly M. Gee
**ATTORNEYS:**

Plaintiff: Michael F. Baltaxe, Law Offices of Michael F. Baltaxe, Westlake Village; Wendy K. Marcus, Law Offices of Timothy B. Sottile, Westlake Village; Timothy B. Sottile, Law Offices of Timothy B. Sottile, Westlake Village.
Defendant: Daryl M. Crone, Crone Hawxhurst, Los Angeles; Joshua Paul Gelbart, Crone Hawxhurst, Los Angeles; Gerald E. Hawxhurst, Crone Hawxhurst, Los Angeles; Diyari Vazquez, Crone Hawxhurst, Los Angeles.

**SUMMARY:**

Verdict/Judgment: Plaintiff

Verdict/Judgment Amount: $17,899,400

Range: $5,000,000-999,999,999

Plaintiff Ward: $133,000 past income; $1,000,000 past and future physical pain, mental suffering, loss of enjoyment of life, inconvenience, grief, humiliation, and emotional distress; $350,000 for past and future physical impairment, including psyche, hypertension, stomach, sleeplessness, anxiety, and chest pain; $1,800,000 punitive damages. Plaintiff Jones: $44,000 past income; $1,000,000 past and future physical pain, mental suffering, loss of enjoyment of life, inconvenience, grief, humiliation, and emotional distress; $1,214,000 punitive damages. Plaintiff Suhay: $71,000 past income; $1,000,000 past and future physical pain, mental suffering, loss of enjoyment of life, inconvenience, grief, humiliation, and emotional distress; $200,000 past and future physical impairment, including hernia and shoulder surgeries; $1,542,000 punitive damages. Plaintiff Valadez: $130,000 past income; $1,000,000 past and future physical pain, mental suffering, loss of enjoyment of life, inconvenience, grief, humiliation, and emotional distress; $500,000 past and future physical impairment, including right knee surgery; $2,043,000 punitive damages. Plaintiff Talton: $144,000 past income; $500,000 past and future medical expenses; $800,000 past and future physical pain, mental suffering, loss of enjoyment of life, inconvenience, grief, humiliation, and emotional distress; $200,000 past and future physical impairment, including back and stress; $1,753,000 punitive damages. Plaintiff January: $140,000 past income; $800,000 past and future physical pain, mental suffering, loss of enjoyment of life, inconvenience, grief, humiliation, and emotional distress; $200,000 past and future physical impairment, including shoulder stress and strain; $1,335,400 punitive damages.

Trial Type: Jury

EXHIBIT F - 15

Trial Length: 13 days.

Deliberations: 1 day.

Jury Poll: Not reported.

**EXPERTS:**

Plaintiff: Jeff Nelken B.S., M.A., R.D., food safety, Woodland Hills, (310) 273-5492.; Karen Lynn Smith, M.A., economist, Adams Smith Economics, San Marino, (626) 796-4040.

Defendant: Not reported.

**TEXT:**

**CASE INFORMATION**

**FACTS/CONTENTIONS**

According to court records: Plaintiffs Robert M. Ward, Robert E. Jones, Jose M. Valadez, Leonard Talton, Gary Suhay, and Alfonso W. January were employed by defendants Cadbury Schweppes Bottling Group, Cadbury Schweppes Holdings Inc., 7-Up/RC Bottling Company of Southern California, Dr. Pepper Snapple Group, and American Bottling Company.

Plaintiffs alleged defendants, through upper management, implemented and enforced an unwritten policy of discrimination against older employees, including plaintiffs. Plaintiffs claimed defendants assigned the older truck drivers more difficult and physically taxing routes so they would quit or become injured, transferred the older forklift operators to more difficult and strenuous duties so that they would quit or become injured, piled work on plaintiffs so that they would quit or become injured, and wrote some plaintiffs up for frivolous and pre-textual reasons.

Plaintiffs alleged discrimination based on age, failure to prevent discrimination or retaliation, constructive discharge in violation of public policy, failure to engage in good-faith interactive process, and failure to accommodate.

**CLAIMED INJURIES**

According to court records:

Hypertension; stomach; sleeplessness; anxiety; chest pain; hernia; shoulder; knee; anxiety; emotional distress; back.

**CLAIMED DAMAGES**

According to court records:

Not reported.

**SETTLEMENT DISCUSSIONS**

According to court records:

Not reported.

**COMMENTS**

According to court records:

The complaint was filed in Los Angeles Superior Court, case number BC410112. It was removed to federal court on May 8, 2009.

EXHIBIT F - 16

Trials Digest, A Thomson Reuters/West business
Central District Federal Court/Los Angeles

---

                                   © 2022 Thomson Reuters. No claim to original U.S. Government Works.

---

  © 2022 Thomson Reuters. No claim to original U.S. Government Works.

EXHIBIT F - 17

JVR No. 1105250063, 2011 WL 3293268 (Cal.Super.) (Verdict and Settlement Summary)

Copyright (c) 2019 Thomson Reuters/West
Superior Court, Los Angeles County, California.

## WELCH v. IVY HILL CORP.

BC414667

DATE OF TRIAL: March 08, 2011

TOPIC:

**SUMMARY**
**Outcome: Plaintiff Verdict**
**Total Verdict: $1,270,000**
**Judge Reduced Award To:**
HIGH AMOUNT: $0

LOW AMOUNT: $0

**EXPERT-WITNESSES:**
**ATTORNEY:**
Plaintiff: Carney R. Shegerian, Santa Monica, CA
Defendant: Kelly O. Scott, Beverly Hills, CA
Karina B. Sterman, Beverly Hills, CA
Jennifer S. Grock, Beverly HIlls, CA

JUDGE: Not Available

RANGE AMOUNT: $1,000,000 - 1,999,999

STATE: California
COUNTY: Los Angeles

**SUMMARY**
**PLAINTIFF:**
Sex: Female

Age: Adult, 62

**DECEDENT:**
**DEFENDANT:**
Sex: Organization

Inactive Defendant (for organization): Ivy Hill Corp.

Policy Limit:

EXHIBIT F - 18

WELCH v. IVY HILL CORP., JVR No. 1105250063 (2011)

Other Expenses: $0

**ENTITY TYPE: General Business Entity**
**DAMAGES:**
Compensatory Past Medical Award: $0

Compensatory Future Medical Award: $0

Compensatory Past Wages Award: $0

Compensatory Future Wages Award: $0

Compensatory Pain And Suffering Award: $1,270,000

Other Compensatory Award: $0

Total Compensatory Award: $1,270,000

Punitive Damages: $0

Hedonic Damages: $0

Property Damages: $0

Other Damages: $0

Interest: $0

Loss of Service: $0

**ADVERSE ACTION**
Closer Supervision: false

Constructive Discharge: false

Demotion: false

Denial Tenure: false

Failure Accomodate: false

Failure Grant Leave: false

Failure Hire: false

Failure Promote: false

Suspension: false

EXHIBIT F - 19

Sexual Harassment: false

Harassment: true

Hostile Work Env: false

Isolation: false

Lay Off: false

Loss Benefits: false

Loss Pay: false

Loss Seniority: false

Negative Eval: false

Negative Reference: false

Pay Increase Denial: false

Reassignment: false

Reduction Pay: false

Reprimands: false

Restrictions: false

Termination: true


**STATUTES**
**Primary Specific Statute**
Primary Name: State


**Primary General Statute**
Primary Name: Age Discrimination

Primary general Statute Discrimination: true

Comparative Negligence Percentage: 0


**FACTS:**
A 62-year-old former account executive sued the defendant company claiming age discrimination in violation of state law. The plaintiff alleged that the defendant wrongfully terminated her due to her age, that her most profitable accounts were taken

rom her, and that she was harassed by her supervisor. The defendant denied the allegations and claimed that the plaintiff was terminated due to a shutdown after the company was sold, and that it was the decision of the acquiring company as to whom it would hire. The defendant further contended that the plaintiff's most profitable account was taken from her t the request of the client.

Jury Verdict Research
COURT: Superior

---

**End of Document**                                   © 2022 Thomson Reuters. No claim to original U.S. Government Works.

JVR No. 1104250047, 2011 WL 2912831 (Cal.Super.) (Verdict and Settlement Summary)

Copyright (c) 2019 Thomson Reuters/West
Superior Court, Orange County, California.

LIEMANDT v. MEGA RV CORP.

30-2010-00388086

DATE OF TRIAL: February 04, 2011

TOPIC:

**SUMMARY**
**Outcome: Plaintiff Verdict**
**Total Verdict: $435,000**
HIGH AMOUNT: $0

LOW AMOUNT: $0

**EXPERT-WITNESSES:**
**ATTORNEY:**
Plaintiff: John A. Belcher, Pasadena, CA
Jeremy Golan, Los Angeles, CA
Defendant: William J. Tebbe, Los Angeles, CA
Adam K. Obeid, Irvine, CA

JUDGE: Not Available

RANGE AMOUNT: $200,000 - 499,999

STATE: California
COUNTY: Orange

**SUMMARY**
**PLAINTIFF:**
Sex: Male

Age: Adult, 68

**DECEDENT:**
**DEFENDANT:**
Sex: Organization

Inactive Defendant (for organization): Mega RV Corp.

Policy Limit:

Other Expenses: $0

EXHIBIT F - 22

**ENTITY TYPE: General Business Entity**
**DAMAGES:**
Compensatory Past Medical Award: $0

Compensatory Future Medical Award: $0

Compensatory Past Wages Award: $0

Compensatory Future Wages Award: $0

Compensatory Pain And Suffering Award: $385,000

Other Compensatory Award: $0

Total Compensatory Award: $385,000

Punitive Damages: $50,000

Hedonic Damages: $0

Property Damages: $0

Other Damages: $0

Interest: $0

Loss of Service: $0

**ADVERSE ACTION**
Closer Supervision: false

Constructive Discharge: false

Demotion: true

Denial Tenure: false

Failure Accomodate: false

Failure Grant Leave: false

Failure Hire: false

Failure Promote: false

Suspension: false

Sexual Harassment: false

Harassment: false

Hostile Work Env: false

Isolation: false

Lay Off: false

Loss Benefits: false

Loss Pay: false

Loss Seniority: false

Negative Eval: false

Negative Reference: false

Pay Increase Denial: false

Reassignment: false

Reduction Pay: false

Reprimands: false

Restrictions: false

Termination: true

**STATUTES**
**Primary Specific Statute**
Primary Name: State

**Primary General Statute**
Primary Name: Age Discrimination

Primary general Statute Discrimination: true

Comparative Negligence Percentage: 0

**FACTS:**
A 68-year-old salesman sued the defendant claiming age discrimination in violation of state law. The plaintiff contended that the defendant wrongfully terminated him due to his age after it demoted him from his management position to a sales position on his return to work after suffering a massive heart attack. The defendant denied the allegations and claimed that the plaintiff

EXHIBIT F - 24

was fired for poor performance and insubordination. It further claimed that more than 70 percent of its employees were more than 50-years-old.

Jury Verdict Research
COURT: Superior

**End of Document**

© 2022 Thomson Reuters. No claim to original U.S. Government Works.

Case 3:22-cv-01950-BEN-DEB   Document 1-2   Filed 12/08/22   PageID.41   Page 30 of 49

Peacock vs. Quest Diagnostics, 27 Trials Digest 14th 10 (2010)

27 Trials Digest 14th 10, 2010 WL 6806990 (C.D.Cal.) (Verdict and Settlement Summary)

Copyright (c) 2019 Thomson Reuters/West
United States District Court, C.D. California, Western Division.

## Peacock vs. Quest Diagnostics

**TOPIC:**

Synopsis: Employee alleges discriminatory termination in violation of CFRA

Case Type: Labor & Employment; Discrimination; Labor & Employment; Termination/Constructive Discharge; Labor & Employment; Violation of Public Policy; Labor & Employment; Family & Medical Leave; Labor & Employment; Disability/Medical Condition; Labor & Employment; Retaliation

DOCKET NUMBER: 09CV09206(JHN)

STATE: California
COUNTY: Not Applicable

Verdict/Judgment Date: December 15, 2010

JUDGE: Jacqueline H. Nguyen

**ATTORNEYS:**

Plaintiff: Christopher B. Adamson, Lavi & Ebrahimian, Los Angeles; Joseph Lavi, Lavi & Ebrahimian, Los Angeles.
Defendant: Deanna L. Ballesteros, Epstein, Becker & Green, Los Angeles; David Jacobs, Epstein, Becker & Green, Los Angeles.

**SUMMARY:**

Verdict/Judgment: Plaintiff

Verdict/Judgment Amount: $229,638

Range: $200,000-499,999
$71,138 past economic; $8,500 future economic; $150,000 past non-economic.

Trial Type: Jury

Deliberations: Not reported.

Jury Poll: Not reported.

**EXPERTS:**

Plaintiff: Not reported.
Defendant: Not reported.

**TEXT:**

**CASE INFORMATION**

**FACTS/CONTENTIONS**

According to court records: Plaintiff Janeen A. Peacock was an employee of defendant Quest Diagnostics, working as a Specimen Tech II from February 2003 until approximately January 16, 2008, when she was wrongfully terminated. In the later part of 2007, plaintiff's Manager and/or Supervisor, Raymond Candeleria, started causing plaintiff severe emotional distress and depression, which manifested itself in panic attacks which were witnessed by Candeleria. Plaintiff informed Candeleria that she had been under a lot of stress at work and that was the reason for her panic attacks, which, over the months, started to increase in frequency and/or duration.

In early January 2008, plaintiff had an outburst at work in front of Candeleria. Plaintiff started crying uncontrollably in front of Candeleria and told him that her outburst was due to severe distress at work.

On January 16, 2008, plaintiff checked herself into Northridge Hospital's Emergency Room due to severe depression. On January 17, 2008, plaintiff informed defendant's Human Resources that she had been admitted into hospital for severe depression and that she had been taken off work. Plaintiff was released on January 21, 2008 and was placed on disability by her treating physician until February 5, 2008. Upon release from the hospital, plaintiff informed defendant of her disability and mailed a copy of her doctor's note placing her off work and on disability.

On January 22, 2008, plaintiff contacted defendant's Benefit Department and informed them that she had to receive psychological treatment and group therapy from January 22, 2008 to February 1, 2008. She was informed that that was okay and that defendant would follow up with plaintiff in a few days.

On February 1, 2008, plaintiff was informed by her treating physician that her insurance had been canceled. Plaintiff contacted Human Resources to find out why and was told that they did not know why.

On February 1, 2008, plaintiff received a letter dated January 31, 2008, stating that defendant had terminated plaintiff's employment for job abandonment.

Plaintiff filed suit for Discriminatory Termination in Violation of the California Family Rights Act, California Government Code § 12945.2; Violation of the California Family Rights Act, California Government Code § 12945.2(a), Interfering with the Rights and Refusing an Employee's Request for a CFRA Medical Leave; Retaliatory Termination in Violation of the California Family Rights Act, California Government Code § 12945.2, for Requesting and Going on a Medical Leave; Tortious Termination and Discrimination in Violation of Public Policy; Disability Discrimination in Violation of FEHA; Discrimination Based on Perceived Disability in Violation of FEHA; Disability Discrimination in Violation of FEHA, Failure to Provide Reasonable Accommodation; Disability Discrimination in Violation of FEHA, Failure to Engage in Interactive Process; Retaliatory Termination in Violation of FEHA for Requesting a Reasonable Accommodation; Tortious Termination and Discrimination in Violation of Public Policy Based on FEHA; and Tortious Termination, Discrimination, and Failure to Hire in Violation of Public Policy for the Right to File a Workers' Compensation Claim due to Work Related Injury.


**CLAIMED INJURIES**
  NA


**CLAIMED DAMAGES**
  According to court records:
  Not reported.


**SETTLEMENT DISCUSSIONS**
According to court records:


Not reported.


**COMMENTS**
According to court records:

EXHIBIT F - 27

Case 3:22-cv-01950-BEN-DEB   Document 1-2   Filed 12/08/22   PageID.43   Page 32 of 49

Peacock vs. Quest Diagnostics, 27 Trials Digest 14th 10 (2010)

The complaint was filed on October 29, 2009.


Trials Digest, A Thomson Reuters/West business
Central District Federal Court/Los Angeles

---

**End of Document**                                        © 2022 Thomson Reuters. No claim to original U.S. Government Works.

EXHIBIT F - 28

19 Trials Digest 11th 10, 2005 WL 6132324 (Cal.Super.) (Verdict and Settlement Summary)

Copyright (c) 2019 Thomson Reuters/West

Superior Court, **San Diego** County, California.

## Marsicz vs. Ultrastar Cinemas

**TOPIC:**

Synopsis: Female employees of movie theater allege sexual harassment by male supervisors

Case Type: Labor & Employment; Harassment-Sexual; Labor & Employment; Gender; Labor & Employment; Harassment-General

DOCKET NUMBER: GIC820896

STATE: California

COUNTY: San Diego

Verdict/Judgment Date: May 17, 2005

JUDGE: John S. Meyer

**ATTORNEYS:**

Plaintiff: John W. Dalton, Law Offices of John W. Dalton, San Diego; Philip Edward Kay, Law Offices of Philip Edward Kay, San Francisco; Jason L. Oliver, Law Offices of Jason L. Oliver, Pasadena; Lawrence Anthony Organ, Law Offices of Philip Edward Kay, San Francisco.

Defendant: David Christopher Baker, Hart, King & Coldren, Santa Ana; Edward D. Chapin, Gordon & Rees, San Diego; William R. Hart, Hart, King & Coldren, Santa Ana; Linda J. Sinclair, Gordon & Rees, San Diego.

**SUMMARY:**

Verdict/Judgment: Plaintiff

Verdict/Judgment Amount: $6,850,000

Range: $5,000,000-999,999,999

Plaintiff Jessica Pollastrini: $125,000 for **emotional distress**; $1,500,000 for punitive damages. Plaintiff Hora: $300,000 for **emotional distress**; $1,500,000 for punitive damages. Plaintiff Marsicz: $300,000 for **emotional distress**; $1,500,000 for punitive damages. Plaintiff Blair Pollastrini: $125,000 for **emotional distress**; $1,500,000 for punitive damages.

Trial Type: Jury

Deliberations: Not reported.

Jury Poll: Not reported.

**EXPERTS:**

Plaintiff: Not reported.

Defendant: Not reported.

EXHIBIT F - 29

Case 3:22-cv-01950-BEN-DEB   Document 1-2   Filed 12/08/22   PageID.45   Page 34 of 49

Marsicz vs. Ultrastar Cinemas, 19 Trials Digest 11th 10 (2005)

**TEXT:**

**CASE INFORMATION**

**FACTS/CONTENTIONS**

According to court records: Plaintiffs Lindsay Marsicz, Maureen Hora, Jessica Pollastrini, and Blair Pollastrini were 16 years old when they were employed with defendant Ultrastar Cinemas, located in Poway, California, as "cast members," meaning they worked as ushers, concessionaires, ticket-takers, or in the box office. Plaintiff Marsicz was employed from October 2001 to September 2002; plaintiff Hora was employed from November 2001 to June 2002; plaintiffs Blair and Jessica Pollastrini were employed from January 2002 to June 2002. Each plaintiff quit because of alleged abuse suffered in the workplace.

Defendant Dan Wooten, ==age== 32, was the general manager of defendant Ultrastar, and defendant Adam Gustafson, ==age== 22, was the assistant manager.

Plaintiffs alleged defendants Wooten and Gustafson created a hostile work environment and participated in sex- or gender-based harassment directed at them.

Plaintiff Marsicz alleged that defendant Wooten kept pornographic magazines in the box office and often told plaintiff Marsicz sex-based jokes. Defendant Wooten told plaintiff Marsicz that only attractive female employees got to work in the box office. Plaintiff Marsicz stated that defendant Gustafson twisted her previously injured shoulder with such force that he dislocated her shoulder, which required surgery to correct. Defendant Gustafson also put a knife to plaintiff Marsicz's throat and threatened her.

Plaintiff Hora alleged defendant Wooten claimed that he would make work difficult for her if she continued to date her boyfriend. Defendant Wooten, on one occasion, put his hand on plaintiff Hora's stomach and told her she must be working out. Defendant Wooten continuously asked plaintiff Hora about her boyfriend and whether she was a virgin. He also made comments about plaintiff's body, telling her he liked the way she walked. On one occasion, defendant Wooten followed plaintiff home from work, waited for her outside her home after she left work, and called her late at night to ask where she had been.

Plaintiff Jessica Pollastrini stated that defendant Gustafson repeatedly hit her in the face with a money bag until she started crying. Plaintiff stated that defendant Gustafson would twist her arm behind her back, lean her forward, and press against her backside, and ask if she liked it or if it hurt.

Plaintiff Blair Pollastrini alleged the same gender-based ==discrimination== and sexual harassment.

Plaintiffs collectively alleged that defendant Ultrastar knew of defendants Wooten and Gustafson's conduct, but failed to take reasonable steps necessary to prevent harassment and ==discrimination==. Plaintiffs alleged defendant Ultrastar failed to conduct an adequate investigation into plaintiffs' claims, failed to enforce their policies, and failed to comply with statutory prohibitions.

Defendant Wooten testified that he did use profanity in the workplace, and thought it acceptable if not used in front of customers. Defendant Wooten admitted to touching defendant Hora's abdomen and admitting to calling her late at night, because plaintiff Hora asked if she could leave work early because her sister had threatened to commit suicide. Defendant Wooten denied all other allegations of ==discrimination== and harassment. He was told by Damon Rubio, vice-president of defendant Ultrastar, to modify his pattern of speech and to attend "sensitivity training" along with other managers. He received no discipline or remedial action, and, in fact, was promoted to director of training.

Defendant Gustafson left defendant Ultrastar in August 2002 to pursue a career with the police force. Defendant Gustafson admitted to putting underage female employees in "restraint holds" without permission. He did not believe that he injured plaintiff Marsicz's shoulder. Defendant Gustafson received an oral "talking to" from Rubio in regard to discipline. He admitted to using profanity but never in a "malicious" fashion.

Defendant argued that plaintiffs would not prevail at trial and that their allegations did not rise to an actionable level and were legally and factually unsustainable.

**CLAIMED INJURIES**

According to court records:

Case 3:22-cv-01950-BEN-DEB   Document 1-2   Filed 12/08/22   PageID.46   Page 35 of 49

Marsicz vs. Ultrastar Cinemas, 19 Trials Digest 11th 10 (2005)

**Emotional distress**.

## CLAIMED DAMAGES
According to court records:
Plaintiffs stipulated that they would not seek economic damages.

## SETTLEMENT DISCUSSIONS
According to court records:

Not reported.

## COMMENTS
According to court records:

The complaint was filed on November 12, 2003. A motion for new trial was granted on the ground of excessive damages. A JNOV motion was denied.

Trials Digest, A Thomson/West business
San Diego County Superior Court/Central

End of Document                                    © 2022 Thomson Reuters. No claim to original U.S. Government Works.

EXHIBIT F - 31

2010 WL 5383296 (Cal.Superior) (Verdict and Settlement Summary)

Copyright (c) 2019 ALM Media Properties, LLC. All Rights Reserved

Superior Court, Los Angeles County, California.

# Mark A. Crawford v. DIRECTV Inc.

No. BC417507

DATE OF VERDICT/SETTLEMENT: September 29, 2010

TOPIC: EMPLOYMENT - DISABILITY DISCRIMINATION - EMPLOYMENT - FAILURE TO ACCOMMODATE - EMPLOYMENT - WRONGFUL TERMINATION - EMPLOYMENT - RETALIATION - EMPLOYMENT - CALIFORNIA'S FAIR EMPLOYMENT & HOUSING ACT

Worker With Ptsd Said He Was Forced to Watch Combat Footage

**SUMMARY:**

RESULT: Arbitration

Award Total: $353,172

The parties entered arbitration, and the arbiter found DIRECTV had failed to offer Crawford reasonable accommodations or engage in the interactive process required by FEHA after Crawford was placed on leave. He found no wrongful termination, retaliation or discrimination.

Crawford was awarded $149,234 for past lost income, $25,200 for non-economic damages, $159,762.50 for attorney fees, $11,123.30 for arbitration costs, and $7,851.80 for prejudgment interest.

**EXPERT WITNESSES:**

Plaintiff: David T. Factor; Economics; Pasadena, CA

**ATTORNEYS:**

Plaintiff: Vincent Calderone; Bononi Law Group; Los Angeles, CA (Mark A. Crawford)

Defendant: Dianne Baquet Smith; Sheppard, Mullin, Richter & Hampton; Los Angeles, CA (DIRECTV Inc.)

JUDGE: Sherman W. Smith

RANGE AMOUNT: $200,000-499,999

STATE: California

COUNTY: Los Angeles

**INJURIES: Crawford claimed he was terminated from his job due to DIRECTV's failure to grant him reasonable accommodation of his disability. He sought an unspecified amount for lost income and non-economic damages.**

**Facts:**

In 1999, plaintiff Mark Crawford, a veteran of the first Gulf War, was hired as a broadcast operator at DIRECTV's Los Angeles broadcast center. In October 2006, his schedule was changed from Sunday through Wednesday to Wednesday through Sunday. He requested a return to his original schedule, claiming he was participating in therapy for post-traumatic stress disorder on

EXHIBIT G - 32

his original days off. He also submitted a note from his social worker which stated that viewing violent images aggravated his condition. He was not returned to his original schedule.

In April 2007, Crawford was placed on administrative leave after two supervisors reported what they claimed was a threatening e-mail. After an evaluation, he was found medically unfit for his position due to his PTSD and placed on medical leave. He was terminated in April 2008 when the leave was exhausted.

Crawford sued DIRECTV, alleging violations of the Fair Employment and Housing Act, wrongful termination and retaliation. He claimed DIRECTV failed to offer him reasonable accommodations for his disability or engage in an interactive process after he was placed on leave. He alleged he requested a reasonable accommodation to a position where he would not be required to watch unedited combat footage, and that he knew of and was qualified for a number of such positions at the company. He claimed no discussions of accommodations were made after he was placed on medical leave.

DIRECTV argued that Crawford did not claim any disabilities prior to his schedule change and that it offered him reasonable accommodations such as days off, job transfers, or a leave of absence, but that he refused them. DIRECTV claimed no accommodations were possible after Crawford was placed on leave as he was never medically cleared to return to work. It further argued there were no available positions where Crawford would not be required to view violent images. The defense contended Crawford was terminated because he was not medically cleared to return to work at the time he ran out of medical leave time.

ALM Properties, Inc.
Superior Court of Los Angeles County, Central

PUBLISHED IN: VerdictSearch California Reporter Vol. 9, Issue 48

---

**End of Document**                                    © 2022 Thomson Reuters. No claim to original U.S. Government Works.

EXHIBIT G - 33

Case 3:22-cv-01950-BEN-DEB   Document 1-2   Filed 12/08/22   PageID.49   Page 38 of 49
Davis v. Robert Bosch Tool Corp., Not Reported in Cal.Rptr.3d (2007)
2007 WL 2014301

🚩 KeyCite Red Flag - Severe Negative Treatment

Unpublished/noncitable July 13, 2007

2007 WL 2014301

Not Officially Published

(Cal. Rules of Court, Rules 8.1105 and 8.1110, 8.1115)

Only the Westlaw citation is currently available.

California Rules of Court, rule 8.1115, restricts citation of unpublished opinions in California courts.

Court of Appeal, Second District, Division 5, California.

Kenneth DAVIS, Plaintiff and Respondent,

v.

ROBERT BOSCH TOOL CORP.

et al., Defendants and Appellants.

No. B185408.

|

(Los Angeles County Super. Ct. No. BC310229).

|

July 13, 2007.

APPEAL from a judgment of the Superior Court of Los Angeles County. Victor E. Chavez, Judge. Affirmed in part and reversed in part.

**Attorneys and Law Firms**

Connelly Sheehan Harris LLP, Rachel B. Cowen, Ellen DeVoe Stuart and Michael Sheehan, pro hac vice; Swerdlow Florence Sanchez Swerdlow & Wimmer, & David A. Wimmer, and Janet Swerdlow for Defendants and Appellants.

Nikki Tolt; Jeffrey A. Brightwell; Benedon & Serlin, Gerald M. Serlin and Douglas G. Benedon for Plaintiff and Respondent.

**Opinion**

ARMSTRONG, Acting P.J.

**\*1** In our original opinion in this matter filed March 28, 2007, we reversed a judgment in favor of Davis against Robert Bosch Corporation. Davis petitioned for a rehearing contending that the judgment should be affirmed because we had erroneously concluded that Robert Bosch Corporation had filed a timely notice of appeal. We granted re-hearing, vacated our decision, and requested briefing. Having reviewed the briefs of the parties, we have determined, for a reason different than the one stated in the original opinion, that Robert Bosch Corporation's notice of appeal was timely. Thus, there is no change in the judgment in this restated opinion.

Ralph Kenneth Davis sued the Robert Bosch Tool Corporation ("Bosch"), the Robert Bosch Corporation ("the Parent"), and Bosch executive Gary Tharp for misrepresentation and deceit, breach of an implied contract not to discharge except for good cause, age discrimination in violation of FEHA, wrongful termination based on age in violation of public policy, invasion of privacy, defamation, and Labor Code violations.

The case went to trial on causes of action for breach of implied contract not to fire without good cause, wrongful termination based on age, defamation, and for unpaid wages. Davis prevailed on the causes of action for breach of contract and for unpaid wages. Defendants prevailed on the causes of action for age discrimination and defamation.

Bosch and the Parent appealed, challenging the sufficiency of the evidence for the jury verdict and the inclusion of the Parent in the judgment. Davis cross-appealed, raising issues concerning damages and costs. We reverse the judgment as to the Parent, and in all other respects affirm.

Summary[1]

Bosch manufactures power tools. Davis was a Bosch salesman. He began work at Bosch in 1982, and did well, winning awards and receiving good performance evaluations. He was paid a salary and commissions.

The facts concerning his dismissal involve a Bosch program called SPIFF (Special Promotional Incentive Fund Field Staff), under which Bosch, through district sales managers like Davis, made small payments to store salesclerks who sold specified Bosch tools. Bosch's evidence was that early in 2002, it observed that Davis's SPIFF payments were exceptionally large and that his SPIFF accounting was otherwise problematic. It conducted an internal audit, put Davis on an unpaid suspension, then hired an investigator, Kroll and Associates, to further investigate. According to Bosch, Davis was fired because he had falsified and forged documents and violated the company's policies concerning the SPIFF program. Davis's evidence was that many of his

EXHIBIT G - 34

SPIFF practices were in compliance with rules and/or had been approved by supervisors, and that in any event he used the SPIFF program to sell more tools, for the benefit of the company. Further, Bosch's investigation was defective. Davis's case was that he was terminated due to his age.

On special verdicts, the jury found that Bosch or the Parent had promised by words or conduct not to discharge Davis except for good cause, that Davis had performed his job duties, that Bosch or the Parent had discharged him without good cause, and that he had suffered economic losses of $195,000; and, on the wage claim, that Bosch or the Parent had willfully withheld wages of $68,025. The jury found against Davis on the age discrimination and defamation causes of action. The court found that the wage claim was encompassed within the breach of contract award, and awarded waiting time penalties for the willfully withheld wages and prejudgment interest on those wages. On Davis's motion for attorney fees (Lab.Code, § 218.5) the court awarded $45,350. Both Davis and Tharp were awarded costs.

The appeal

  1. The notice of appeal
 **\*2**  Bosch's argument is that the trial court erred in denying its motion for judgment notwithstanding the verdict. Davis contends that we have no jurisdiction to hear the question, because the ruling is not encompassed in the notice of appeal.

We see no such obstacle. Bosch's notice of appeal states that it is an appeal "from the Judgment entered on June 7, 2005." It then states "Notice of Entry of Judgment was mailed by the Clerk in Department 96 on June 7, 2005. Defendant timely filed a Motion for New Trial, a Motion for Judgment not Withstanding the Verdict, and a Motion to Vacate Judgment, all of which were denied on July 19."

Our Supreme Court has instructed us to read a notice of appeal liberally, and given such a reading, we think that this notice of appeal is adequate to challenge the denial of the motion notwithstanding the verdict. *Walker v. Los Angeles County Metropolitan Transportation Authority* (2005) 35 Cal.4th 15 considered a notice of appeal which stated only that the appeal was from an order denying a new trial, a non-appealable order. The Court held that "[b]ecause '[t]he law aspires to respect substance over formalism and nomenclature' [citation] a reviewing court should construe a notice of appeal from an order denying a new trial to be an appeal from the underlying

judgment when it is reasonably clear the appellant intended to appeal from the judgment and the respondent would not be misled or prejudiced." (*Id.* at p. 22, see also *Gu v. BMW of North America, LLC* (2005) 132 Cal.App.4th 195, 203 [under *Walker,* appeal from order sustaining demurrer without leave to amend is interpreted as appeal from the judgment].)

Here, as Davis argues, unlike *Walker,* the issue concerns not a non-appealable order denying a new trial, but an order which can be appealed. (Code Civ. Proc., § 904.1, subd. (a)(4).) However, *Walker* directs us to look to substance, not form. Bosch's notice of appeal specifically mentions the denial of the motion for judgment notwithstanding the verdict, and we think that it is reasonably clear that Bosch intended to appeal from the ruling. Nor can we find that Davis is prejudiced by our interpretation of the notice. The notice of appeal informed him that the ruling was at issue. Moreover, Bosch most certainly appealed the judgment, and the standard of review for appeal of a judgment notwithstanding the verdict is the same. (*Sweatman v. Department of Veterans Affairs* (2001) 25 Cal.4th 62, 68.)

  2. Waiver
Bosch's first issues on appeal are challenges to the sufficiency of the evidence for the finding of wrongful termination. Bosch contends that Davis did not present evidence to rebut the presumption of at will employment or prove that his discharge was not for good cause. Bosch also contends that the evidence was insufficient for the jury finding that Bosch owed wages. As Davis contends, Bosch has not presented us with a full record of the evidence presented to the jury. We thus must affirm.

 **\*3**  The missing evidence was proffered by Davis, who, as part of his case-in-chief, played portions of the videotaped depositions of Bosch Chief Financial Officer Katina Xouria, Bosch Director of Human Resources Sharon Glieberman, Bosch regional manager Bryan Jackman, former Bosch employee Noel Kidd, and Tony Alvizu of Kroll. The videotapes were not transcribed by the court reporter, and neither party offered the tapes or any transcript into evidence. Thus, despite the fact that Bosch designated the entire reporter's transcript, our record includes no evidence of the content of the tapes.

We may not reverse a judgment until we have examined "the entire cause, including the evidence." (Cal. Const., art. 6, § 13) We must presume in favor of the judgment, and that error must be demonstrated. "[I]t is settled that: 'A

EXHIBIT G - 35

2007 WL 2014301

judgment or order of the lower court is *presumed correct.* All intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown. This is not only a general principle of appellate practice but an ingredient of the constitutional doctrine of reversible error.' (3 Witkin, Cal. Procedure (1954) Appeal, § 79, pp. 2238-2239; *Minardi v. Collopy,* 49 Cal.2d 348, 353; *Coleman v. Farwell,* 206 Cal. 740, 742.)" (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.)

Bosch's argument on this point is that, since it designated the entire reporter's transcript, it was up to Davis to augment the record with the tapes. (Of course, since the tapes were neither transcribed nor entered into evidence, augmentation is not quite right. An agreed or settled statement would be required. (Cal. Rules of Court, rules 8.134 and 8.137).) In legal support, Bosch relies on *McMahon v. Superior Court* (1946) 29 Cal.2d 515 and *Skoglie v. Crumley* (1972) 26 Cal.App.3d 294.

*McMahon* arose from trial court proceedings to settle a transcript. The petitioner (the case involved a request for writ of mandate) had asked the trial court to settle and certify a transcript, but the motion was denied after a party below objected on grounds of lack of completeness. The Court explained that "It is apparent that the parties have been proceeding under the practice which obtained prior to the adoption of the new Rules on Appeal (22 Cal.2d 1), although these rules, which became effective July 1, 1943, are applicable to and govern this case. Under the new rules the trial judge is not charged with the function of 'settling' or certifying all transcripts; in the absence of a request for correction of an alleged mistake, the record is transmitted with the certification of the reporter (Rule 4(d), 22 Cal.2d 4) and of the clerk. (Rules 5(d), 8(a), 22 Cal.2d 5-6, 8.) The petition herein discloses that respondents in the main appeal filed a document entitled 'Objection to Settlement of Transcripts, Etc.,' in part on the ground that they did not constitute 'a full and complete transcript of the proceedings'; and that petitioner filed an 'Answer to Objections re Settlement of Transcripts,' in which he stated that he was forwarding to the court 'corrections' to be noted in the reporter's transcript. *The objection on the ground of lack of completeness is no longer tenable, and the remedy of a respondent, if he desires a complete transcript, is to designate the balance thereof.* (Rules 4(b), 5(b), 22 Cal.2d 3, 5.) If, however, corrections have been requested by either party, it is the duty of the trial judge to hear and determine the request, and thereafter to certify the transcripts, with such corrections, if any, as he may

allow. (Rule 8(b), 22 Cal.2d 8-9.)" (*McMahon v. Superior Court, supra,* 29 Cal.2d at pp. 518-519[emphasis added.)

**\*4** Bosch cites the language italicized above, finding in it a holding that it is a respondent's duty to make up for omissions in the transcript. We see no such holding. *McMahon* does not concern an appellant's duty to provide an appellate court with the record necessary to determine the claims. The disposition tells the story: the Court issued a peremptory writ of mandate directing the trial court "to determine the request for correction of the transcripts, and thereafter to certify the transcripts as correct." (*McMahon, supra,* 29 Cal.2d at p. 519.)

In *Skoglie,* the appellant designated only those portions of the oral transcript he deemed relevant to the sole issue on appeal. Respondent augmented the record to some extent, but argued that because the Court of Appeal could not examine "the entire cause," it could not find error. *Skoglie* disagreed, noting that under the rules of court, "If an appellant, in his notice of appeal, states the point or points to be raised by him on the appeal, he may designate the portions of the oral proceedings to be transcribed or direct the omission of any portions which he deems unnecessary. If a respondent is not satisfied with the omissions of other portions, he may serve and file a designation of any additional oral proceedings he desires included in the record. (Cal. Rules of Court, rule 4(b).) When a reporter's transcript containing only a portion of the oral proceedings is thereafter certified by the judge or the clerk, it is presumed in the absence of proceedings for augmentation that it includes all matters material to a determination of the points on appeal." (*Skoglie, supra,* 26 Cal.App.3d at p. 297.)

In support of the later point, *Skoglie* cited California Rules of Court, rule 52, now California Rules of Court, rule 8.163, which provides that "The reviewing court will presume that the record in an appeal includes all matters material to deciding the issues raised. If the appeal proceeds without a reporter's transcript, this presumption applies only if the claimed error appears on the face of the record."

*Skoglie* concluded that "... although respondent contends we are required to review all of the evidence presented to the trial court before any determination can be made that prejudicial error occurred, he apparently has not considered the effect of rule 52. Respondent did not seek to enlarge the record on appeal by filing a counter-designation in the trial court and, apart from the limited augmentation obtained

Case 3:22-cv-01950-BEN-DEB   Document 1-2   Filed 12/08/22   PageID.52   Page 41 of 49
Davis v. Robert Bosch Tool Corp., Not Reported in Cal.Rptr.3d (2007)
2007 WL 2014301

in this court, he has not sought further augmentation of the record, nor has he contended that the testimony of any other witness is relevant to the sole issue raised by appellant. We therefore consider that the record before us is adequate for purposes of review, and that a full consideration of such record meets the constitutional requirements of section 13 of article VI." (*Skoglie, supra,* 26 Cal.App.3d at p. 298.)

Bosch's reliance on *Skoglie* misses a critical difference between that case and this one: in *Skoglie,* the appellant designated everything relevant to the sole issue on appeal. Here, Bosch has challenged the sufficiency of the evidence for the jury verdict, which means that *all* the evidence is relevant to its appeal. Evidence sufficient to support the verdict might be found in the testimony of the missing witnesses. We cannot know, and in the absence of such knowledge, we must presume that it is so.

 **\*5** An appellant "must affirmatively demonstrate error by an adequate record. In the absence of a contrary showing in the record, all presumptions in favor of the trial court's action will be made by the appellate court. '[I]f any matters could have been presented to the court below which would have authorized the order complained of, it will be presumed that such matters were presented.' [Citation.]" (*Bennett v. McCall* (1993) 19 Cal.App .4th 122, 127.)

Bosch could have guaranteed the inclusion of all evidence in the appellate record by requesting transcription in the trial court, or moving to have the tapes marked as exhibits and entered into evidence, or it could have proceeded by settled statement on this appeal. (*Maria P. v. Riles* (1987) 43 Cal.3d 1281, 1295.) It did none of those things, and cannot proceed on its sufficiency of the evidence claims.

   3. The judgment against the Robert Bosch Company
As we have seen, there were two defendants at trial, Bosch and the Parent. The jury verdicts asked whether Bosch or the Parent, had, for instance, "promise [d] ... not to discharge Kenneth Davis except for good cause?" During preparation of the verdicts, the parties and the court agreed that the liability of the Parent would be a question for the court, to be decided after the verdict was returned.

Post-verdict, counsel for Davis prepared a judgment which included the Parent as a judgment debtor. Bosch and the Parent filed an objection. The court heard argument, and on June 7 signed a judgment which did *not* include the Parent. Davis then filed a motion under Code of Civil Procedure

section 473 to correct the judgment by adding the Parent, titling the motion one to correct a clerical error, nunc pro tunc, and asserting that the Parent "was shown to be the employer of Plaintiff by uncontroverted evidence." Bosch and the Parent objected.

At oral argument on July 19, 2005, the court indicated that it would grant Davis's motion, but explained that it was not making a ruling on alter ego, but was merely correcting the judgment to reflect the jury verdict. The minute order notes that the ruling was pursuant to Code of Civil Procedure section 473, and specifies the amendments. As amended, the judgment reads "It appearing by reason of said verdict that plaintiff Kenneth Davis is entitled to judgment against defendant Robert Bosch Tool Corporation or defendant Robert Bosch Corporation," and ordering "Plaintiff Kenneth Davis recovers from Defendant Robert Bosch Tool Corporation or defendant Robert Bosch Corporation the sum of $195,000.00...."

In August, during argument on defendants' motion for costs, Davis argued that since the Parent had been added to the judgment, Davis was the prevailing party. The court noted that the issue of the Parent's liability was still open, and requested additional briefing on the question. Something similar happened at a September hearing. At that hearing, the court deferred the issue until October.

 **\*6** On October 25 the trial court issued a written ruling which, under the heading "Alter Ego Theory of Liability and/or Parental Liability of Defendant Robert Bosch Corporation," reads:

   "On July 19, 2005, the Court added 'or Defendant Robert Bosch Corporation' to the June 7, 2005 judgment in order to more adequately reflect the language of the Special Verdict. By adding this language, the Court did not make a finding that Defendant Robert Bosch Corporation was a judgment debtor or that Defendant Robert Bosch Corporation was liable under an alter ego or parental liability theory. Since the conclusion of the trial, the Court expected and requested further evidence and argument regarding those theories of liability. Although Defendant Robert Bosch Tool Corporation and Defendant Robert Bosch Corporation have set forth substantive arguments regarding these issues, Plaintiff's documents never adequately addressed the issue of parental liability. Accordingly, the Court asked for additional briefing, and, as a result held over a determination on the alter ego and/or parental liability issue on at least three occasions. Plaintiff

EXHIBIT G - 37

2007 WL 2014301

failed to provide such additional support or argument. [¶] The June 7, 2005 judgment against Defendant Robert Bosch Tool Corporation and/or Defendant Robert Bosch Corporation is on appeal. Due to this pending appeal, the Court has now lost jurisdiction to make a determination on the alter ego and parental liability questions. CCP § 916. If jurisdiction had not been lost, based upon the Court's review of the evidence presented at trial, the Court would have concluded that Plaintiff had not satisfied the 'integrated enterprise test' set forth in *Laird v. Capital Cities* (1998) 68 Cal.App.4th 727, 737, and, therefore, Defendant Robert Bosch Corporation would not be liable."

In the written ruling and the minute order of that date, the court granted Davis's motion to tax costs, re the Parent, and struck the Parent's Memorandum of Costs.

There were then further proceedings in the trial court, commenced when Davis moved ex parte for a nunc pro tunc correction of the judgment due to an arithmetical mistake in the costs award. A copy of the June 7 judgment, signed by the court, and with the interlineations adding the Parent, was attached to the motion.

Defendants agreed that there was an arithmetical mistake, but opposed the motion on the ground that the judgment was not the correct judgment because it had never been entered as a judgment or served on the parties and because it was contrary to the court's ruling of October 25.

At oral argument on January 6, the Parent asked the court to enter a new judgment which would preserve its appeal rights. The court's January 6 order was that the June 7 judgment be amended nunc pro tunc to change the costs. On January 17, the Parent Corporation filed a new notice of appeal, appealing the January 6 judgment.

On this appeal, the Parent contends that "the January 6, 2006 addition of the Parent Company to the Judgment was legal error." The Parent argues that the evidence was insufficient, and also argues that the amendments to the judgment were not clerical, but substantive, and that the court had no power to make such amendments.

*Timeliness of the Appeal*

**\*7**  There is a threshold issue, the timeliness of the Parent's appeal. Davis argues that the notice of appeal, which was filed on January 17, 2006, was untimely. In Davis's view, the Parent had 60 days from July 19, 2005-the day on which

the court amended the judgment nunc pro tunc, on Davis's motion-in which to appeal. In return, the Parent argues that under California Rules of Court, rule 8.104, subdivision (a) (3), it had 180 days from July 19, 2005, to appeal, making its January notice of appeal timely. We agree with the Parent.

The 60 day rule is found in California Rules of Court, rule 8.104, subdivision (a), which provides that "a notice of appeal must be filed on or before the earliest of: (1)60 days after the superior court clerk mails the party filing the notice of appeal a document entitled 'Notice of Entry' of judgment or a file-stamped copy of the judgment, showing the date either was mailed; (2)60 days after the party filing the notice of appeal serves or is served by a party with a document entitled 'Notice of Entry' of judgment or a file-stamped copy of the judgment, accompanied by proof of service; ..."

Here, the only thing served or mailed on July 19 was a copy of the minute order, which is not entitled "notice of entry of judgment." The 60 day rule does not apply. Instead, under California Rules of Court, rule 8.104, subdivision (a)(3), the Parent had 180 days after entry of judgment in which to appeal. The parties agree that (at the earliest) judgment was entered on July 19, 2005.

On re-hearing, the Parent has provided us with the correct calculation under the 180 day rule. When the first day is excluded, and weekends and holidays accounted for, pursuant to California Rules of Court, rule 1.10, the notice of appeal was timely. That is, 180 days from July 19 falls on January 15, a Sunday. The next day was a holiday, Martin Luther King Day. When both Sunday and Monday are excluded, the last day for filing was January 17, and the appeal was timely.

Nor can there be any doubt that the January 17 notice of appeal is sufficient to bring all the issues on the merits before us. "[N]otices of appeal are to be liberally construed so as to protect the right of appeal if it is reasonably clear what appellant was trying to appeal from, and where the respondent could not possibly have been misled or prejudiced." (*Luz v. Lopes* (1960) 55 Cal.2d 54, 59.) Davis has clearly at all times understood that the January 17 notice of appeal is an appeal from the July 19 judgment. He impliedly acknowledged as much when he urged us to find that the notice of appeal was untimely, dated from July 19, and when moved to dismiss the appeal on the ground that the January 17 notice of appeal was not a timely appeal from the July 19 judgment.

*The merits*

EXHIBIT G - 38

2007 WL 2014301

We agree with the Parent that the July 19 amendments were not clerical corrections, but a substantive ruling, and were thus outside the court's power. Under Code of Civil Procedure section 473, subdivision (d) "The court may, upon motion of the injured party, or its own motion, correct clerical mistakes in its judgment or orders as entered, so as to conform to the judgment or order directed, ..."

**\*8** " 'The general rule is that once a judgment has been entered, the trial court loses its unrestricted power to change that judgment. The court does retain power to correct clerical errors in a judgment which has been entered.... [Citation.]" (*Rochin v. Pat Johnson Manufacturing* (1998) 67 Cal.App.4th 1228, 1232.) "An amendment that substantially modifies the original judgment or materially alters the rights of the parties, may not be made by the court under its authority to correct clerical error, ..." (*In re Candelario* (1970) 3 Cal.3d 702, 705.)

Davis's argument on this issue rests on its contention that the jury found that both Bosch and the Parent had breached their employment contract with Davis and owed him unpaid wages. Not so. The jury was asked whether Bosch *or* the Parent had breached a contract or owed wages, an entirely different matter.

Before the July 17 amendments, the Parent was not a judgment debtor, and could move for costs as a prevailing party. After the amendment, it was a judgment debtor, and could not. The July 17 amendments to the judgment were substantive, not clerical.

Davis also relies on the court's comment that it had only corrected a clerical error. The argument is a peculiar one. The court did make that comment, but it did so while under the misapprehension, induced by Davis, that the ruling did not make the Parent liable on the judgment. If that is indeed Davis's interpretation of the amended judgment, he should have no problem with the result we reach here.

Finally, the Parent asks us to find that it was a prevailing party entitled to costs. That is a matter for the trial court on remand.

**Davis's Cross-Appeal**

**1. The ruling on the unpaid wages award**
The jury was instructed that in order to determine damages for breach of employment contract, it must "decide the amount

that Kenneth Davis would have earned from [Bosch and the Parent] up to today ... Two, add the present cash value of any future wages and benefits that he would have earned after today for the length of time the employment with [Bosch and the Parent] was reasonably certain to continue. The special verdict form asked "What are Kenneth Davis's damages for breach of employment contract?" and asked the jury to specify past economic lost and future economic loss. The jury put the past lost at $195,000 and the future loss at zero.

The jury was also instructed that to establish his claim for unpaid wages, Davis was required to prove that he worked for Bosch and the Parent, was discharged by Bosch and the Parent, that Bosch and the Parent owed Davis wages under the terms of the employment, and the amount of the unpaid wages. The jury was also instructed that "wages includes all amounts for labor performed by an employee, whether the amount is calculated by time, task, fees, commissions, or other matters."

The special verdict asked whether Bosch or the Parent discharged Davis and whether Bosch or the Parent "owe Kenneth Davis wages under the terms of employment?" Having answered both questions "yes," the jury was then asked "What is the amount of unpaid wages?" and answered "$68,205."

**\*9** Davis's argument references the evidence that he was put on unpaid leave in September 2002, and fired in March 2003. The argument is that the unpaid wages award represented Davis's wages between his suspension in September 2002, and his termination of March 2003; and the award for past economic loss represents amounts owed for the period between Davis's termination and trial.[2]

We simply see nothing in the record which would allow us to agree. The jury was not instructed that past economic losses should be awarded for one time period and unpaid wages awarded for another, and we have no reason to believe that it did so.

**2. Fees**
Davis moved for attorney's fees under Labor Code section 218.5, which provides that "In any action brought for the nonpayment of wages, fringe benefits, or health and welfare or pension fund contributions, the court shall award reasonable attorney's fees and costs to the prevailing party if any party to the action requests attorney's fees and costs upon

EXHIBIT G - 39

the initiation of the action." Davis presented evidence that over 2000 attorney hours had been billed and that $841,695 had been spent in fees. He sought a multiplier of two, based on the risks taken by counsel in pursing the action on a contingency basis, the skill displayed by counsel, and the importance of the case to the public, and sought an award of $1,683,390. The court awarded only $45,350.

Davis contends that the award was an abuse of discretion. He begins his argument by citing the rule that California recognizes the prompt payment of wages due as a fundamental policy. (*Smith v.. Rae-Venter Law Group* (2002) 29 Cal.4th 345, 360.) He then argues that an award of fees under Labor Code section 218.5 should be calculated through the lodestar adjustment method applicable to other kinds of statutory fee awards, such as fees under FEHA or under Code of Civil Procedure section 425.16. With such a calculation, the court determines the lodestar amount by determining reasonable number of hours spent and the prevailing hourly rate, then may increase or reduce the amount based on such factors as the novelty and difficulty of the questions involved, the skill displayed, the extent to which the litigation precluded other employment by the attorneys, and the contingent nature of the fee award. (*Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1131-1132.)

Davis argues that the court did not make such a calculation here, but merely applied a mathematical formula, and awarded two-thirds of the award of unpaid wages, which is impermissible. (*Press v. Lucky Stores, Inc.* (1983) 34 Cal.3d 311, 322-323.)

Even if Davis is correct that the lodestar method applies, we see no abuse of discretion. First, Labor Code section 218.5 did not entitle Davis to fees for prosecuting his entire case, which included causes of action dismissed prior to trial, and causes of action (defamation, age discrimination, and invasion of privacy) on which Davis did not prevail and which would seem to have nothing to do with proof of the wage claim. Much of the trial was occupied with Davis's proof of the existence of an implied contract to terminate only for good cause, and proof that his SPIFF practices were legitimate and that Bosch's investigation was defective, issues that had little to do with the wage claim. A claim for wages owed does not depend on a finding of wrongful discharge. (*Gould v. Maryland Sound Industries, Inc.* (1995) 31 Cal.App.4th 1137, 1147.) When we presume in favor of the judgment (*Levy v. Toyota Motor Sales, U.S.A., Inc.* (1992) 4 Cal.App.4th 807, 816), we cannot conclude that the court merely applied a

formula, but instead conclude that the court considered the bills and determined the number of hours reasonably spent. We also note that while counsel asked to be compensated at $350 an hour for one plaintiff's lawyer, and $300 an hour for the other, the court was not obliged to accept those requests. (*Ibid.*)

**\*10** We agree with Davis that given the amount of the award it is unlikely that the court applied a multiplier, but given that Davis asked the jury for over $3 million, and recovered much less, we do not see that the court abused its discretion in this regard.

### 3. The award of costs to Tharp

Bosch executive Gary Tharp was a defendant in the case, named only in the cause of action for defamation. In that cause of action, Davis contended that Tharp (and the other defendants) committed the tort by publishing the statements that Davis had been terminated, that Bosch was giving its files to the FBI, and that Bosch employees should distance themselves from Davis; by representing and implying to the industry and prospective employers that Davis was a criminal; and by "adding the further statement by innuendo that [Davis] was not competent to perform his job and carry out his chosen trade, occupation and profession." Tharp prevailed at trial, and later moved for costs of $19,133. The court made that award.

Davis contends that the award was an abuse of discretion. (*Gibson v. Bobroff* (1996) 49 Cal.App.4th 1202, 1209.) He notes that Tharp, one of three defendants, sought one-third of jury fees, expert witness fees, deposition costs, etc., and argues that none of these costs except a first appearance fee and part of Tharp's deposition costs related to Tharp's defense. In Davis's view, Tharp was entitled only to costs solely attributable to his own defense, and was not entitled to costs for anything that also benefited other defendants.

We see no abuse of discretion here. The trial largely involved Davis's activities relating to the SPIFF program and Bosch's investigation of those activities, directly relevant to the statements allegedly made by Tharp, and thus to the defamation claim. Further, we see no support in law for Davis's theory that Tharp is not entitled to costs if the cost also benefited the other defendants. This essentially amounts to a theory that, for instance, when all defendants request a jury, no defendant may recover those costs.

EXHIBIT G - 40

2007 WL 2014301

Davis makes two additional arguments concerning expert witness fees. One is that Tharp was not entitled to those costs because his offer to compromise (Code Civ. Proc., § 998) was not reasonable and in good faith. "A plaintiff who does not accept a valid pretrial offer to compromise and who fails to obtain a more favorable judgment or award may be required to pay defendant's expert witness costs, so long as the section 998 offer was reasonable and made in good faith." (*Hartline v. Kaiser Foundation Hospitals* (2005) 132 Cal.App.4th 458, 470-471.) The reasonableness of the offer is determined by an examination of all the circumstances, and is left to the sound discretion of the trial court. (*Ibid.*) Where a defendant obtains a judgment more favorable than its offer, the judgment is prima facie evidence that the offer was reasonable. (*Elrod v. Oregon Cummins Diesel, Inc.* (1987) 195 Cal.App.3d 692, 699.)

**\*11** Tharp's offer was that Davis would dismiss all claims against him and that each party would bear its own fees and costs. Davis recovered nothing from Tharp, making the offer, which would have spared Davis from paying costs, reasonable.

Davis's other argument about the expert fees is that neither expert was relevant to Tharp's defense. One of the experts testified on damages, surely relevant to any defendant. The other was Michael Robbins, a lawyer and consultant called by Davis, who opined on Bosch's investigation of Davis's malfeasance. As we have noted, the defamation claim was intertwined with the evidence concerning the SPIFF program and the investigation, making that expert's testimony relevant to Tharp. Moreover, our record does not include Robbins's deposition testimony, or the expert declaration relating to him. We thus cannot say what Tharp could have legitimately anticipated regarding Robbins's deposition, and what necessity Tharp saw for participating in that deposition.

Davis also contends that the court erroneously allowed amounts for witness meetings, court equipment, and parking charges. The argument ignores Code of Civil Procedure section 1033.5, subdivision (c)(4), which provides that "[i]tems not mentioned in this section and items assessed upon application may be allowed or denied in the court's discretion." Items not specifically allowable under Code of Civil Procedure section 1033.5, subdivision (a) and not prohibited under Code of Civil Procedure section 1033.5, subdivision (b) may be recoverable in the discretion of the court if reasonably necessary to the conduct of the litigation rather than merely convenient or beneficial to its preparation. (Code Civ. Proc., § 1033.5, subd. (c)(2).) Whether a cost item was reasonably necessary to the litigation presents a question of fact for the trial court and is reviewed for abuse of discretion. (*City of Anaheim v. Department of Transportation* (2005) 135 Cal.App.4th 526, 534-535; *Applegate v. St. Francis Lutheran Church* (1994) 23 Cal.App.4th 361, pp. 363-364.) Davis's bare argument does not establish abuse of discretion.

Disposition

We reverse the judgment as to the Parent, and in all other respects affirm. Gary Tharp and the Parent to recover costs on appeal. All other parties to bear their own costs.

We concur: MOSK and KRIEGLER, JJ.

**All Citations**

Not Reported in Cal.Rptr.3d, 2007 WL 2014301

Footnotes

1    Bosch's motion to augment the record with the transcript of hearings held on October 18 and 25, 2005, is granted.

2    In a footnote, Davis suggests that the possibility of double recovery was discussed (during argument on the special verdict form, and that the form was drafted to avoid that problem. At the cited pages of the record, counsel and the court certainly had some discussion of double recovery, at least with respect to the age discrimination and wrongful discharge causes of action. However, the court and counsel were working from draft forms which we do not have, so that we cannot really follow the conversation. We certainly cannot say (as Davis argues) that the court and counsel agreed that the form submitted to the jury prevented the jury from awarding a double recovery.

WESTLAW   © 2022 Thomson Reuters. No claim to original U.S. Government Works.

EXHIBIT G - 41

**Davis v. Robert Bosch Tool Corp., Not Reported in Cal.Rptr.3d (2007)**

2007 WL 2014301

---

**End of Document**                                                © 2022 Thomson Reuters. No claim to original U.S.
Government Works.

---

EXHIBIT G - 42

2006 WL 5305734 (Cal.Super.) (Verdict and Settlement Summary)

Copyright (c) 2019 ALM Media Properties, LLC. All Rights Reserved
Superior Court, San Diego County, California

## Fred Denenberg v. California Department of Transportation

No. GIC836582

DATE OF VERDICT/SETTLEMENT: September 16, 2006

TOPIC: EMPLOYMENT - SEXUAL ORIENTATION DISCRIMINATION - EMPLOYMENT - FAILURE TO ACCOMMODATE

Clerk Claimed Discrimination Based on Disability, Orientation

**SUMMARY:**

RESULT: Verdict-Plaintiff

The jury did not find any discrimination based on sexual orientation. It did, however, find the defendant failed to provide Denenberg with a reasonable accommodation and discriminated against him on the basis of a disability. The jury awarded Denenberg $119,000 in economic damages and $25,000 in noneconomic damages, for a total $144,000. The judge awarded him an additional $490,000 in attorney's fees and $133,000 in costs, and ordered the department of transportation to award him a retroactive promotion. The promotion will result in an additional $12,000 of annual earnings through his career as well as upward adjustments to his retirement benefits.

**EXPERT WITNESSES:**

Plaintiff: Brian P. Brinig, J.D., C.P.A.; Damage Analysis; San Diego, CA Christopher Benbo, M.D.; Psychiatry; La Jolla, CA George Pratt, Ph.D.; Psychology/Counseling; La Jolla, CA Michael A. Robbins; Human Resources Policies; Bell Canyon, CA

Defendant: Mark A. Kalish, M.D.; Psychology/Counseling; San Diego, CA

**ATTORNEYS:**

Plaintiff: Paul D. Jackson; Law Offices of Paul D. Jackson; San Diego, CA (Fred Denenberg); David M. deRubertis; The deRubertis Law Firm; Woodland Hills, CA (Fred Denenberg)

Defendant: Christopher J. Welsh; California Department of Transportation; San Diego, CA (California Department of Transportation); Julie A. Jordan; CalTrans Legal Department; San Diego, CA (California Department of Transportation)

JUDGE: Steven R. Denton

RANGE AMOUNT: $100,000-199,999

STATE: California

COUNTY: San Diego

**INJURIES: Denenberg claimed that he suffered emotional distress and sought treatment from a psychologist. He also sought to recover the income he lost when he took a leave of absence to cope with the distress caused by the way his employer treated him.**

**Facts:**

In 1998 plaintiff Fred Denenberg, a gay man, was hired by the California Department of Transportation as an office technician, an entry-level position. He received excellent performance reviews and was promoted to assistant administrator. Starting in

EXHIBIT G - 43

1999, he sought promotion to associate administrator, the next job level above his own. Such a promotion would normally occur in relatively short time, he alleged, but his requests were repeatedly denied. He was told that budgetary constraints had forced the company to put into place a hiring and promotions freeze. When the freeze was lifted on July 1, 2004, Joseph Hull, the deputy director of traffic operations, promised Denenberg that his promotion would be processed.

When Hull had not yet finished processing the paperwork by late August 2004 despite Denenberg's further complaints, Denenberg sought legal counsel. His attorney, Paul Jackson, sent the department's upper management a letter alleging that Denenberg had been the subject of harassment based on his sexual orientation and that the department had failed to promote him because he was gay. Afterward, Denenberg's superiors and co-workers leveled accusations of wrongdoing against him. The alleged wrongdoing included telling a co-worker to "kiss his ass," making derogatory comments about a co-worker's religion, slamming a door in a co-worker's face and acting in a rude manner toward co-workers and management.

In late September 2004, Denenberg, who claimed to be suffering from stress and depression related to his workplace, complained about a sexually related email sent from a co-worker a year earlier. At the instruction of a psychologist, he went on a leave of absence, and the department stopped processing his promotion.

In August 2005, one year after his original stress leave began, Denenberg's psychologist recommended that he be given an accommodation that allowed him to telecommute. Hull did not allow telecommuting, however, and denied the accommodation. The psychologist revised the accommodation to request that Denenberg return to the workplace but that any face-to-face interaction with the co-workers he claimed had retaliated against him be minimized. Hull denied that request as well.

When Denenberg was able to return to work without restriction, the department informed him it had eliminated his position and offered him six other positions that were equivalent or nearly equivalent to his former position. Denenberg declined them all.

Denenberg sued the California Department of Transportation for discrimination and retaliation on the basis of sexual orientation and discrimination and retaliation on the basis of disability. He contended that for a period of about 1.5 years he was harassed based on his sexual orientation; the alleged harassment consisted of perceived sexual advances, derogatory comments about his orientation and a degrading, homophobic email. He claimed that the department's refusal to promote him in September 2004 was in retaliation for the letter his attorney wrote complaining of harassment and discrimination. He also claimed that the department's stated reason for not promoting him--that he went on medical leave--indicated disability discrimination and showed that the company was retaliating against him for seeking accommodation of a disability. He further alleged that when his psychologist approved his return to work with a minimum of interaction with co-workers, there were desks and offices available that could have been used to meet this request.

The defendant denied any wrongdoing. It claimed that the reason Denenberg was not promoted was because he had either failed the promotional exam or did not receive a high enough score for placement. The state budget crises, the department's budget, and the lack of available work prevented promotions for new hires until June 30, 2004. Once the freeze was lifted, the plaintiff was promised a noncompetitive promotion. It contended that it had begun processing a noncompetitive promotion for Denenberg at the time he took his leave but stopped when he was out for almost two years and the department did not know when or whether he would return to work and that, under the Civil Service Act, the promotion could not go through because he was not at work to accept the new appointment. This had implications for his retirement and benefits.

The department also claimed that the request to telecommute was denied because the position required interaction with co-workers and the timely sharing of information. The department noted that over the course of nine months, it offered the plaintiff six alternative positions at the same classification and rate of pay but he refused all of them. Finally, the company denied any knowledge of the claimed harassment.

Before the trial began, the plaintiff dropped the claim that he should have been promoted before 2003. The state had a freeze on promotions and new hires between June 2003 and June 2004.

EXHIBIT G - 44

At trial, the defense impeached Denenberg's credibility by attacking his assertion that he had never been involved in any other lawsuits by introducing numerous lawsuits that he had either filed or were filed against him.

The defendant claimed that it was not his workplace problems that caused the plaintiff's medical condition but rather other stressors, such as a tumultuous relationship with his domestic partner who suffered from chronic medical problems. The defendant introduced evidence of domestic discord, including allegations of domestic abuse.

Insurer:

Self insured California Department of Transportation

ALM Properties, Inc.
Superior Court of San Diego County, at San Diego

PUBLISHED IN: VerdictSearch California Reporter Vol. 7, Issue 4

---

**End of Document**

© 2022 Thomson Reuters. No claim to original U.S. Government Works.

---

 © 2022 Thomson Reuters. No claim to original U.S. Government Works. 3

EXHIBIT G - 45